# EXHIBIT 1



THE STATE OF OHIO

VOLUME CXXXVIII

# LEGISLATIVE ACTS
(EXCEPTING APPROPRIATION ACTS)

PASSED

AND

# JOINT RESOLUTIONS

ADOPTED

BY THE
ONE HUNDRED AND THIRTEENTH GENERAL ASSEMBLY
OF OHIO

AT ITS REGULAR SESSION
JANUARY 2, 1979 to DECEMBER 19, 1980, INCLUSIVE

Issued by
**Anthony J. Celebrezze, Jr.**
Secretary of State

Published by
**Sherrod Brown**
Secretary of State, 1985

# AN ACT

To amend sections 1333.72, 1333.75, 1333.76, 4517.01, 4517.13, 4517.14, 4517.15, 4517.22, 4517.23, 4517.24, 4517.25, 4517.30, 4517.31, 4517.32, 4517.33, 4517.34, 4517.43, and 4517.99; to amend, for the purpose of adopting new section numbers as indicated in parentheses, sections 1333.72 (4517.59), 1333.75 (4517.62), and 1333.76 (4517.63); to enact sections 4517.50, 4517.51, 4517.52, 4517.53, 4517.54, 4517.55, 4517.56, 4517.57, 4517.58, 4517.60, 4517.61, 4517.64, and 4517.65; and to repeal sections 1333.71, 1333.73, 1333.74, 1333.77, and 1333.78 of the Revised Code to establish the duties and responsibilities of motor vehicle franchisors to their franchisees, provide hearings on protests filed by franchisees, afford relief to other affected parties, and change the name of the Motor Vehicle Dealers' and Salespersons' Licensing Board to the Motor Vehicle Dealers Board.

*Be it enacted by the General Assembly of the State of Ohio:*

SECTION 1. That sections 1333.72, 1333.75, 1333.76, 4517.01, 4517.13, 4517.14, 4517.15, 4517.22, 4517.23, 4517.24, 4517.25, 4517.30, 4517.31, 4517.32, 4517.33, 4517.34, 4517.43, and 4517.99 be amended, that sections 1333.72 (4517.59), 1333.75 (4517.62), and 1333.76 (4517.63) be amended for the purpose of adopting new section numbers as indicated in parentheses, and that sections 4517.50, 4517.51, 4517.52, 4517.53, 4517.54, 4517.55, 4517.56, 4517.57, 4517.58, 4517.60, 4517.61, 4517.64, and 4517.65 of the Revised Code be enacted to read as follows:

Sec. 4517.01. As used in sections 4517.01 to 4517.45 4517.65

of the Revised Code:

(A) "Persons" includes individuals, firms, partnerships, associations, joint stock companies, corporations, and any combinations of individuals.

(B) "Motor vehicle" means motor vehicles as defined in section 4501.01 of the Revised Code.

(C) "New motor vehicle" means a motor vehicle, the legal title to which has never been transferred by a manufacturer, distributor, or dealer to an ultimate purchaser.

(D) "Ultimate purchaser" means, with respect to any new motor vehicle, the first person, other than a dealer purchasing in his capacity as a dealer, who in good faith purchases such new motor vehicle for purposes other than resale.

(E) "Business" includes any activities engaged in by any person for the object of gain, benefit, or advantage either direct or indirect.

(F) "Engaging in business" means commencing, conducting, or continuing in business, or liquidating a business when the liquidator thereof holds himself out to be conducting such business; making a casual sale or otherwise making transfers in the ordinary course of business when the transfers are made in connection with the disposition of all or substantially all of the transferor's assets is not engaging in business.

(G) "Retail sale" or "sale at retail" means the act or attempted act of selling, bartering, exchanging, or otherwise disposing of a motor vehicle to an ultimate purchaser for use as a consumer.

(H) "Retail installment contract" includes any contract in the form of a note, chattel mortgage, conditional sales contract, lease, agreement, or other instrument payable in one or more installments over a period of time and arising out of the retail sale of a motor vehicle.

(I) "Farm machinery" means all machines and tools used in the production, harvesting, and care of farm products.

(J) "Dealer" or "motor vehicle dealer" means any new motor vehicle dealer, any motor vehicle leasing dealer, and any used motor vehicle dealer.

(K) "New motor vehicle dealer" means any person engaged in the business of selling at retail, displaying, offering for sale, or dealing in new motor vehicles pursuant to a contract or agreement entered into with the manufacturer or distributor of the motor vehicles.

(L) "Used motor vehicle dealer" means any person engaged in the business of selling at retail, displaying, offering for sale, or dealing in used motor vehicles, but does not mean any new motor vehicle dealer selling, displaying, offering for sale, or dealing in used motor vehicles incidentally to engaging

Case: 1:12-cv-00445-TSB Doc #: 46-1 Filed: 10/30/13 Page: 4 of 16 PAGEID #: 3304

S. B. No. 206                                   706

in the business of selling, displaying, offering for sale, or dealing in new motor vehicles, any person engaged in the business of dismantling, salvaging, or rebuilding motor vehicles by means of using used parts, or any public officer performing his official duties.

(M) "Motor vehicle leasing dealer" means any person engaged in the business of regularly making available, offering to make available, or arranging for another person to use a motor vehicle pursuant to a bailment, lease, or other contractual arrangement under which a charge is made for its use at a periodic rate for at least a monthly term, and title to the motor vehicle is in a person other than the user, but does not mean a manufacturer or its affiliate leasing to its employees or to dealers.

(N) "Salesperson" means any person employed by a dealer to sell, display, and offer for sale, or deal in motor vehicles for a commission, compensation, or other valuable consideration, but does not mean any public officer performing his official duties.

(O) "Casual sale" means any transfer of a motor vehicle by a person other than a dealer, salesperson, motor vehicle auction owner, manufacturer, or distributor acting in his capacity as a dealer, salesperson, auction owner, manufacturer, or distributor, to a person who purchases the motor vehicle for use as a consumer.

(P) "Motor vehicle show" means a display of current models of motor vehicles whereby the primary purpose is the exhibition of competitive makes and models in order to provide the general public the opportunity to review and inspect various makes and models of motor vehicles at a single location.

(Q) "Motor vehicle auction owner" means any person who is engaged wholly or in part in the business of auctioning motor vehicles.

(R) "Manufacturer" means a person who manufactures, assembles, or imports motor vehicles, including motor homes, but does not mean a person who only assembles and installs a body or special equipment unit on a motor vehicle chassis supplied by another independent manufacturer or supplier.

(S) "Tent-type fold out camping trailer" means any vehicle intended to be used, when stationary, as a temporary shelter with living and sleeping facilities, and which is subject to the following properties and limitations:

(1) A minimum of twenty-five per cent of the fold out portion of the top and sidewalls combined must be constructed of canvas, vinyl, or other fabric, and form an integral part of the shelter.

S. B. No. 206                                   707

(2) When folded, the unit must not exceed:

(a) Fifteen feet in length, exclusive of bumper and tongue;
(b) Sixty inches in height from the point of contact with the ground;
(c) Eight feet in width;
(d) One ton gross weight at time of sale.

(T) "Distributor" means any person authorized by a motor vehicle manufacturer to distribute new motor vehicles to licensed new motor vehicle dealers.

(U) "Flea market" means a market place, other than a dealer's location licensed under this chapter, where a space or location is provided for a fee or compensation to a seller to exhibit and offer for sale or trade, motor vehicles to the general public.

(V) "FRANCHISE" MEANS THE WRITTEN AGREEMENT, CONTRACT, OR UNDERSTANDING BETWEEN ANY MOTOR VEHICLE MANUFACTURER ENGAGED IN COMMERCE AND ANY MOTOR VEHICLE DEALER WHICH PURPORTS TO FIX THE LEGAL RIGHTS AND LIABILITIES OF THE PARTIES TO SUCH AGREEMENT, CONTRACT, OR UNDERSTANDING.

(W) "FRANCHISEE" MEANS A PERSON WHO RECEIVES NEW MOTOR VEHICLES FROM THE FRANCHISOR UNDER A FRANCHISE AGREEMENT AND WHO OFFERS, SELLS, AND PROVIDES SERVICE FOR SUCH NEW MOTOR VEHICLES TO THE GENERAL PUBLIC.

(X) "FRANCHISOR" MEANS A NEW MOTOR VEHICLE MANUFACTURER OR DISTRIBUTOR WHO SUPPLIES NEW MOTOR VEHICLES UNDER A FRANCHISE AGREEMENT TO A FRANCHISEE.

(Y) "DEALER ORGANIZATION" MEANS A STATE OR LOCAL TRADE ASSOCIATION THE MEMBERSHIP OF WHICH IS COMPRISED PREDOMINANTLY OF NEW MOTOR VEHICLE DEALERS.

(Z) "FACTORY REPRESENTATIVE" MEANS A REPRESENTATIVE EMPLOYED BY A MANUFACTURER OR BY A FACTORY BRANCH PRIMARILY FOR THE PURPOSE OF PROMOTING THE SALE OF ITS MOTOR VEHICLES, PARTS, OR ACCESSORIES TO DEALERS OR FOR SUPERVISING OR CONTACTING ITS DEALERS OR PROSPECTIVE DEALERS.

(AA) "ADMINISTRATIVE OR EXECUTIVE MANAGEMENT" MEANS THOSE INDIVIDUALS WHO ARE NOT SUBJECT TO FEDERAL WAGE AND HOUR LAWS.

(BB) "GOOD FAITH" MEANS THE DUTY OF ANY PARTY TO ANY FRANCHISE, AND ALL OFFICERS, EM-

S. B. No. 206 708

PLOYEES, OR AGENTS THEREOF, TO ACT IN A FAIR AND EQUITABLE MANNER TOWARD EACH OTHER SO AS TO GUARANTEE THE ONE PARTY FREEDOM FROM COERCION, INTIMIDATION, OR THREATS OF COERCION OR INTIMIDATION FROM THE OTHER PARTY; PROVIDED HOWEVER, THAT RECOMMENDATION, ENDORSEMENT, EXPOSITION, PERSUASION, URGING, OR ARGUMENT SHALL NOT BE CONSIDERED TO CONSTITUTE A LACK OF GOOD FAITH.

(CC) "COERCE" MEANS THE FAILURE TO ACT IN A FAIR AND EQUITABLE MANNER IN PERFORMING OR COMPLYING WITH ANY TERMS OR PROVISIONS OF THE FRANCHISE OR AGREEMENT; PROVIDED HOWEVER, THAT RECOMMENDATION, EXPOSITION, PERSUASION, URGING, OR ARGUMENT SHALL NOT BE CONSIDERED TO CONSTITUTE A LACK OF GOOD FAITH.

(DD) "RELEVANT MARKET AREA" MEANS ANY AREA WITHIN A RADIUS OF TEN MILES FROM THE SITE OF A POTENTIAL NEW DEALERSHIP, EXCEPT THAT FOR HOUSE TRAILER OR RECREATIONAL VEHICLE DEALERSHIPS THE RADIUS SHALL BE TWENTY-FIVE MILES.

Sec. 4517.13. The registrar of motor vehicles shall deny the application of any person for a license as a distributor and refuse to issue him the license if the registrar finds that the applicant:

(A) Has made any false statement of a material fact in his application;

(B) Has not complied with sections 4517.01 to 4517.45 of the Revised Code;

(C) Is of bad business repute or has habitually defaulted on financial obligations;

(D) Is engaged or will engage in the business of distributing any new motor vehicle without having the authority of a contract with the manufacturer of the vehicle;

(E) Has been guilty of a fraudulent act in connection with selling or otherwise dealing in motor vehicles;

(F) Has entered into or is about to enter into a contract or agreement with a manufacturer of motor vehicles that is contrary to sections 4517.01 to 4517.45 of the Revised Code;

(G) Is insolvent;

(H) Is of insufficient responsibility to ensure the prompt payment of any financial judgment that might reasonably be entered against him because of the transaction of his business as a distributor during the period of the license applied for, or has failed to satisfy any such judgment;

S. B. No. 206 709

(I) Has no established place of business that, where applicable, is used or will be used exclusively for the purpose of distributing new motor vehicles at the location for which application is made;

(J) Has, less than twelve months prior to making application, been denied a distributor's, motor vehicle dealer's, motor vehicle leasing dealer's, or motor vehicle auction owner's license, or had any such license revoked.

If the applicant is a corporation or partnership, the registrar may refuse to issue a license if any officer, director, employee, or partner of the applicant has been guilty of any act or omission that would be cause for refusing or revoking a license issued to such officer, director, employee, or partner as an individual. The registrar's finding may be based upon facts contained in the application or upon any other information he may have. Immediately upon denying an application for any of the reasons in this section, the registrar shall enter a final order together with his findings and certify the same to the motor vehicle dealers' and salespersons' licensing DEALERS board.

Sec. 4517.14. The registrar of motor vehicles shall deny the application of any person for a license as a salesperson and refuse to issue him the license if the registrar finds that the applicant:

(A) Has made any false statement of a material fact in his application;

(B) Has not complied with sections 4517.01 to 4517.45 of the Revised Code;

(C) Is of bad business repute or has habitually defaulted on financial obligations;

(D) Has been guilty of a fraudulent act in connection with selling or otherwise dealing in motor vehicles;

(E) Has not been designated to act as salesperson for a motor vehicle dealer licensed to do business in this state under section 4517.10 of the Revised Code, or intends to act as salesperson for more than one licensed motor vehicle dealer at the same time;

(F) Holds a current motor vehicle dealer's license issued under section 4517.10 of the Revised Code, and intends to act as salesperson for another licensed motor vehicle dealer;

(G) Has, less than twelve months prior to making application, been denied a salesperson's license or had a salesperson's license revoked.

The registrar may refuse to issue a salesperson's license to an applicant who was salesperson for, or in the employ of, a motor vehicle dealer at the time the dealer's license was revoked. The registrar's REGISTRAR'S finding may be based upon any

S. B. No. 206 710

statement contained in the application or upon any facts within his knowledge, and, immediately upon refusing to issue a salesperson's license, the registrar shall enter a final order and shall certify the final order together with his findings to the motor vehicle dealers' and salespersons' licensing DEALERS board.

Sec. 4517.15. Any person who has been denied a license under section 4517.12, 4517.13, or 4517.14 of the Revised Code may appeal from the action of the registrar of motor vehicles to the motor vehicle dealers' and salespersons' licensing DEALERS board in the manner provided in section 4517.33 of the Revised Code.

Sec. 4517.22. (A) Any group of licensed new motor vehicle dealers may display motor vehicles at a motor vehicle show within the general market area allocated to a licensed new motor vehicle dealer, whenever all of the following conditions are met:

(1) The primary purpose of the motor vehicle show is the exhibition of competitive makes and models of motor vehicles to provide the general public the opportunity to review and inspect various makes and models of motor vehicles at a single location;

(2) Not less than thirty days before the planned opening date of the motor vehicle show, the group requests and receives permission to hold the show from the registrar of motor vehicles.

(B) No contracts shall be signed, deposits taken, or sales consummated at the location of a motor vehicle show.

(C) Any sponsor of a motor vehicle show shall offer by mail an invitation to all new motor vehicle dealers dealing in competitive types of motor vehicles in the general market area to participate and display motor vehicles in the show. The sponsor may offer a similar invitation to manufacturers or distributors. A copy of each invitation shall be retained by the sponsor for at least one year after the show.

(D) No person except a manufacturer or distributor shall hold in any public place a motor vehicle show at which only one motor vehicle is displayed, and no such single unit show shall be held unless the manufacturer or distributor requests and receives permission from the registrar not less than thirty days before the show.

(E) The registrar shall not grant permission for any motor vehicle show to be held, unless it is proven to his satisfaction that no attempt is being made to circumvent the provisions of sections 4517.01 to 4517.45 of the Revised Code.

(F) Nothing contained in this section shall be construed as prohibiting the taking of orders for travel trailers as defined in section 4501.01 of the Revised Code or tent-type fold out camping trailers at sports or camping shows.

S. B. No. 206 711

(G) No motor vehicle dealer, motor vehicle leasing dealer, motor vehicle auction owner, or distributor licensed under sections 4517.01 to 4517.45 of the Revised Code shall display a motor vehicle at any place except his licensed location, unless he first obtains permission from the registrar and complies with the applicable rules of the motor vehicle dealers' and salespersons' licensing DEALERS board.

Sec. 4517.23. Any licensed motor vehicle dealer, motor vehicle leasing dealer, or distributor shall notify the registrar of motor vehicles concerning any change in his status as a dealer, motor vehicle leasing dealer, or distributor during the period for which he is licensed, if the change of status concerns any of the following:

(A) Personnel of owners, partners, officers, or directors;
(B) Location of office or principal place of business;
(C) In the case of a motor vehicle dealer, any contract or agreement with any manufacturer or distributor; and in the case of a distributor, any contract or agreement with any manufacturer.

The notification shall be made by filing with the registrar, within fifteen days after the change of status, a supplemental statement in a form prescribed by the registrar showing in what respect the status has been changed. If the change involves a change in any contract or agreement between any manufacturer or distributor, and dealer, or any manufacturer and distributor, the supplemental statement shall be accompanied by such copies of contracts, statements, and certificates as would have been required by sections 4517.01 to 4517.45 of the Revised Code if the change had occurred prior to the licensee's application for license.

The motor vehicle dealers' and salespersons' licensing DEALERS board may adopt a rule exempting from the notification requirement of division (A) of this section any dealer if stock in the dealer or its parent company is publicly traded and if there are public records with state or federal agencies that provide the information required by division (A) of this section.

Sec. 4517.24. No two motor vehicle dealers shall engage in business at the same location, unless they agree to be jointly, severally, and personally liable for any liability arising from their engaging in business at the same location. The agreement shall be filed with the motor vehicle dealers' and salespersons' licensing DEALERS board, and shall also be made a part of the articles of incorporation of each such dealer filed with the secretary of state. Whenever the board has reason to believe that a dealer who has entered into such an agreement has revoked the agreement but continues to engage in business at the same location, the board shall revoke his license.

S. B. No. 206

712

Sec. 4517.25. Every dealer shall maintain a mileage disclosure statement from the previous owner of each motor vehicle the dealer sells, purchases, or receives as a trade on another motor vehicle. The mileage disclosure statement shall be in such form and include such information as the motor vehicle dealers' and salespersons' licensing DEALERS board requires by rule.

Sec. 4517.30. The motor vehicle dealers' and salespersons' licensing DEALERS board shall consist of nine ELEVEN members. The registrar of motor vehicles shall be a member of the board, and the other eight TEN members shall be appointed by the governor with the advice and consent of the senate. Not more than four FIVE of the eight TEN members other than the registrar shall be of any one political party, and of the eight TEN:

(A) One THREE shall represent the public and shall not have engaged at any time in the business of selling motor vehicles at retail in this state;

(B) Five shall have been engaged in the business of selling motor vehicles at retail in this state for at least five years and have been engaged in such business within two years previous PRIOR to the date of their appointment. Of these five:

(1) Three shall have been engaged in the sale of new motor vehicles;

(2) One shall have been engaged in the business of selling house trailers or recreational vehicles at retail;

(3) One shall have been engaged in the sale of used motor vehicles.

(C) Two shall have been engaged in the leasing of motor vehicles.

Terms of office of the eight TEN members appointed by the governor shall be for three years, commencing on the fifth day of October and ending on the fourth day of October except that upon expiration of the term ending March 24, 1975, the new term, which succeeds it, shall commence on March 25, 1975 and end on October 4, 1977, and upon expiration of the term ending January 12, 1976, the new term which succeeds it shall commence on January 13, 1976 and end on October 4, 1978. Each member shall hold office from the date of his appointment until the end of the term for which he was appointed. Any member appointed to fill a vacancy occurring prior to the expiration of the term for which his predecessor was appointed shall hold office for the remainder of such term. Any appointed member shall continue in office subsequent to the expiration date of his term until his successor takes office, or until a period of sixty days has elapsed, whichever occurs first. Annually the board

S. B. No. 206

713

shall organize by selecting from its members a president. Each appointed member of the board shall receive thirty dollars for each day of actual service during the meetings of the board, and shall be reimbursed for the actual and necessary expenses incurred in the discharge of his official duties.

Sec. 4517.31. The motor vehicle dealers' and salespersons' licensing DEALERS board shall be a part of the department of highway safety for administrative purposes in the following respects:

(A) The registrar of motor vehicles shall be ex officio secretary and executive officer of the board, but he may designate any employee of the bureau of motor vehicles as acting secretary to perform the duties and exercise the powers of the secretary of the board.

(B) All clerical, inspection, and other agencies for the execution of the powers and duties vested in the board shall be in the bureau of motor vehicles, which shall provide the necessary employees as authorized by section 4501.02 of the Revised Code.

The board may publish each year a directory or list of licensed dealers, motor vehicle leasing dealers, distributors, auction owners, and salespersons, and may publish therewith any matter it considers pertinent; the board shall mail one copy of the directory to each licensed dealer, motor vehicle leasing dealer, distributor, and auction owner without charge.

Sec. 4517.32. The SUBJECT TO SECTIONS 119.01 TO 119.12 OF THE REVISED CODE, THE motor vehicle dealers' and salespersons' licensing DEALERS board may make such reasonable rules as are necessary to carry out and effect sections 4517.01, 4517.04, 4517.05, 4517.06, 4517.07, 4517.08, 4517.09, 4517.10, 4517.12, 4517.13, 4517.23, 4517.30, and 4517.32, AND 4517.50 TO 4517.65 of the Revised Code, and such further rules as are necessary relating to the time, place, and manner of conducting hearings on the issuance, suspension, or revocation of licenses, AND ON PROTESTS FILED UNDER SECTIONS 4517.50, 4517.52, 4517.53, 4517.54, AND 4517.56 OF THE REVISED CODE. The board may hear testimony in matters relating to the duties imposed upon it and the president and the secretary of the board may administer oaths. The board may require any proof it considers advisable and may require the attendance of such witnesses and the production of such books, records, and papers as it desires at any hearing before it or relating to any matter that it has authority to investigate. The board may, through its secretary, issue a subpoena for any witness, or a subpoena duces tecum for the production of any books, records, and papers, directed to the sheriff of the county where such witness resides or is found, which subpoena shall be

S. B. No. 206     714

served and returned in the same manner as a subpoena in a criminal case.

The fees and mileage of the sheriff and witnesses shall be the same as that allowed in the court of common pleas in criminal cases and shall be paid in the court of common pleas in the same manner as other expenses of the board.

Depositions of witnesses residing within or without the state may be taken by the board in the manner prescribed for like depositions in civil actions in the court of common pleas. In any case of disobedience to or neglect of any subpoena served on any person, or the refusal of any witness to testify to any matter regarding which he may lawfully be interrogated, the court of common pleas of any county where such disobedience, neglect, or refusal occurs, or any judge thereof on application of the secretary of the board, shall compel obedience by attachment proceedings for contempt as in the case of disobedience of a subpoena issued from such court or a refusal to testify therein.

Sec. 4517.33. The motor vehicle ~~dealers' and salespersons' licensing~~ DEALERS board shall hear appeals which may be taken from an order of the registrar of motor vehicles, refusing to issue a license. All appeals from orders of the registrar refusing to issue any license upon proper application must be taken within thirty days from the date of the order, or the order is final and conclusive. All appeals from orders of the registrar must be by petition in writing and verified under oath by the applicant whose application for license has been denied, and must set forth the reason for the appeal and the reason why, in the petitioner's opinion, the order of the registrar is not correct. In such appeals the board may make investigation to determine the correctness and legality of the order of the registrar.

The board may make rules governing its actions relative to the suspension and revocation of dealers, motor vehicle leasing dealers', distributors', auction owners', and salespersons' licenses and may, upon its own motion, and shall, upon the verified complaint in writing of any person, investigate the conduct of any licensee under sections 4517.01 to 4517.45 of the Revised Code. The board shall suspend or revoke or notify the registrar to refuse to renew any dealer's, motor vehicle leasing dealer's, distributor's, auction owner's, or salesperson's license if any ground existed upon which the license might have been refused, or if a ground exists which would be cause for refusal to issue a license.

The board may suspend or revoke any license if the licensee has in any manner violated the rules issued pursuant to sections 4517.01 to 4517.45 of the Revised Code, or has violated sec-

S. B. No. 206     715

tion 4501.02 of the Revised Code, or has been convicted of committing a felony or violating any law that in any way relates to the selling, taxing, licensing, or regulation of sales of motor vehicles.

Sec. 4517.34. The attorney general and the prosecuting attorneys of the several counties shall assist the registrar of motor vehicles upon his request, and shall assist the motor vehicle ~~dealers' and salespersons' licensing~~ DEALERS board, upon its request, in enforcing sections 4517.01 to ~~4517.45~~ 4517.65 of the Revised Code, and in prosecuting and defending preceedings under such sections.

Sec. 4517.43. The applications for licenses and the copies of contracts required by sections 4517.04, 4517.05, 4517.06, 4517.07, 4517.08, and 4517.09 of the Revised Code are not part of the public records but are confidential information for the use of the registrar of motor vehicles and the motor vehicle ~~dealers' and salespersons' licensing~~ DEALERS board. No person shall divulge any information contained in such applications and acquired by him in his capacity as an official or employee of the bureau of motor vehicles or of the board, except in a report to the registrar, to the board, or when called upon to testify in any court or proceeding.

Sec. 4517.50. (A) EXCEPT AS PROVIDED IN DIVISION (D) OF THIS SECTION, WHEN A FRANCHISOR SEEKS TO ENTER INTO A FRANCHISE TO ESTABLISH AN ADDITIONAL MOTOR VEHICLE DEALERSHIP IN, OR RELOCATE AN EXISTING MOTOR VEHICLE DEALERSHIP AT A LOCATION IN, A RELEVANT MARKET AREA WHERE THE SAME LINE-MAKE OF MOTOR VEHICLE IS THEN REPRESENTED, THE FRANCHISOR SHALL FIRST GIVE NOTICE IN WRITING TO THE MOTOR VEHICLE DEALERS BOARD AND TO EACH FRANCHISEE IN SUCH LINE-MAKE IN THE RELEVANT MARKET AREA OF THE FRANCHISOR'S INTENTION TO ESTABLISH AN ADDITIONAL DEALERSHIP IN, OR RELOCATE AN EXISTING DEALERSHIP AT A LOCATION IN, THAT MARKET AREA. WITHIN FIFTEEN DAYS AFTER RECEIVING THE NOTICE, OR WITHIN FIFTEEN DAYS AFTER THE CONCLUSION OF ANY APPEAL PROCEDURE PROVIDED BY THE FRANCHISOR, WHICHEVER IS LATER, THE FRANCHISEE OF THE SAME LINE-MAKE MAY FILE WITH THE BOARD A PROTEST AGAINST THE ESTABLISHMENT OR RELOCATION OF THE DEALERSHIP. WHEN SUCH A PROTEST HAS BEEN FILED, THE BOARD SHALL INFORM THE FRANCHISOR THAT A TIMELY PROTEST HAS BEEN FILED, THAT A HEARING IS REQUIRED PURSUANT TO SEC-

S. B. No. 206

716

TION 4517.57 OF THE REVISED CODE, AND THAT THE FRANCHISOR SHALL NOT ESTABLISH OR RELOCATE THE DEALERSHIP UNTIL THE BOARD HAS HELD THE HEARING REQUIRED BY THAT SECTION, NOR ESTABLISH OR RELOCATE THE DEALERSHIP THEREAFTER IF THE BOARD DETERMINES THERE IS GOOD CAUSE FOR NOT PERMITTING THE DEALERSHIP TO BE ESTABLISHED OR RELOCATED. WHEN MORE THAN ONE PROTEST IS FILED AGAINST THE ESTABLISHMENT OR RELOCATION OF THE SAME DEALERSHIP, THE BOARD MAY CONSOLIDATE THE HEARINGS TO EXPEDITE DISPOSITION OF THE ISSUE.

(B) FOR THE PURPOSES OF THIS SECTION, THE REOPENING IN A RELEVANT MARKET AREA OF A MOTOR VEHICLE DEALERSHIP THAT HAS NOT BEEN IN OPERATION FOR ONE YEAR OR LONGER SHALL BE CONSIDERED TO BE THE ESTABLISHMENT OF AN ADDITIONAL MOTOR VEHICLE DEALERSHIP.

(C) NO FRANCHISOR SHALL ESTABLISH AN ADDITIONAL MOTOR VEHICLE DEALERSHIP OR RELOCATE AN EXISTING DEALERSHIP BEFORE THE HOLDING OF A HEARING ON ANY PROTEST FILED UNDER THIS SECTION, AND NO FRANCHISOR SHALL ESTABLISH OR RELOCATE SUCH A DEALERSHIP AFTER THE HEARING IF THE BOARD DETERMINES THERE IS GOOD CAUSE FOR NOT PERMITTING THE DEALERSHIP TO BE ESTABLISHED OR RELOCATED.

(D) DIVISION (A) OF THIS SECTION DOES NOT APPLY TO THE RELOCATION OF AN EXISTING DEALERSHIP WHEN THE NEW LOCATION IS LESS THAN ONE MILE FROM THE EXISTING LOCATION AND IS IN THE SAME RELEVANT MARKET AREA AS THAT LOCATION.

Sec. 4517.51. IN DETERMINING WHETHER GOOD CAUSE HAS BEEN ESTABLISHED FOR NOT ESTABLISHING AN ADDITIONAL MOTOR VEHICLE DEALERSHIP OR RELOCATING AN EXISTING MOTOR VEHICLE DEALERSHIP AS PROVIDED IN SECTION 4517.50 OF THE REVISED CODE, THE MOTOR VEHICLE DEALERS BOARD SHALL TAKE INTO CONSIDERATION THE EXISTING CIRCUMSTANCES, INCLUDING, BUT NOT LIMITED TO, ALL OF THE FOLLOWING:

(A) THE EFFECT OF THE ESTABLISHMENT OR RELOCATION ON THE RETAIL MOTOR VEHICLE BUSINESS AND THE CONSUMING PUBLIC IN THE RELEVANT MARKET AREA;

S. B. No. 206

717

(B) WHETHER IT IS INJURIOUS OR BENEFICIAL TO THE PUBLIC INTEREST FOR THE DEALERSHIP TO BE ESTABLISHED OR RELOCATED;

(C) WHETHER THE FRANCHISEES OF THE SAME LINE-MAKE IN THE RELEVANT MARKET AREA ARE:

(1) PROVIDING ADEQUATE COMPETITION AND CONVENIENT CONSUMER CARE FOR THE MOTOR VEHICLES OF THE SAME LINE-MAKE IN THE RELEVANT MARKET AREA, WHICH SHALL INCLUDE THE ADEQUACY OF MOTOR VEHICLE SALES AND SERVICE FACILITIES, EQUIPMENT, SUPPLY OF VEHICLE PARTS, AND QUALIFIED SALES AND SERVICE PERSONNEL;

(2) PROVIDING ADEQUATE MARKET PENETRATION AND REPRESENTATION.

Sec. 4517.52. (A) EACH FRANCHISOR SHALL ADEQUATELY AND FAIRLY COMPENSATE EACH OF ITS FRANCHISEES FOR LABOR AND PARTS USED TO FULFILL WARRANTY AND RECALL OBLIGATIONS OF REPAIR AND SERVICING. EACH FRANCHISOR SHALL FILE A COPY OF ITS WARRANTY AND RECALL REIMBURSEMENT SCHEDULES OR FORMULAS WITH THE MOTOR VEHICLE DEALERS BOARD. THE SCHEDULES OR FORMULAS SHALL BE REASONABLE WITH RESPECT TO THE TIME AND COMPENSATION ALLOWED A FRANCHISEE FOR THE WARRANTY AND RECALL WORK, REIMBURSEMENT PROCEDURES, AND ALL OTHER CONDITIONS OF SUCH OBLIGATIONS. THE REASONABLENESS OF THE SCHEDULES OR FORMULAS SHALL BE SUBJECT TO THE DETERMINATION OF THE BOARD, WHEN A FRANCHISEE OR DEALER ORGANIZATION FILES A NOTICE OF PROTEST WITH THE BOARD.

(B) IN DETERMINING THE ADEQUACY AND FAIRNESS OF A FRANCHISOR'S WARRANTY AND RECALL REIMBURSEMENT SCHEDULES OR FORMULAS, THE PRINCIPAL FACTORS TO BE CONSIDERED BY THE BOARD SHALL BE THE PREVAILING WAGE RATES BEING PAID BY THE FRANCHISEES IN THE COMMUNITY IN WHICH THE FRANCHISEE IS DOING BUSINESS; EXCEPT THAT THE COMPENSATION OF A FRANCHISEE FOR WARRANTY AND RECALL SERVICE AND PARTS SHALL NOT BE AT LESS THAN THE RATES CHARGED BY THE FRANCHISEE TO ITS RETAIL CUSTOMERS FOR LIKE SERVICE AND PARTS FOR NONWARRANTY WORK. THE SCHEDULES OR FORMULAS SHALL INCLUDE A REASONABLE ALLOWANCE OF TIME FOR THE DIAGNOSIS AND PERFORMANCE OF REPAIRS BY A TECHNICIAN OF ORDINARY SKILL.

S. B. No. 206    718

Sec. 4517.53. (A) EACH FRANCHISOR SHALL SPECIFY TO ITS FRANCHISEES IN WRITING THE DELIVERY AND PREPARATION OBLIGATIONS OF THE FRANCHISEES PRIOR TO THE DELIVERY OF NEW MOTOR VEHICLES TO RETAIL BUYERS. A COPY OF THE DELIVERY AND PREPARATION OBLIGATIONS, WHICH SHALL CONSTITUTE THE FRANCHISEE'S ONLY RESPONSIBILITY FOR PRODUCT LIABILITY BETWEEN THE FRANCHISEE AND THE FRANCHISOR, AND A SCHEDULE OF COMPENSATION TO BE PAID FRANCHISEES FOR THE WORK AND SERVICES THEY ARE REQUIRED TO PERFORM IN CONNECTION WITH THE DELIVERY AND PREPARATION OBLIGATIONS, SHALL BE FILED BY THE FRANCHISOR WITH THE MOTOR VEHICLE DEALERS BOARD AND SHALL CONSTITUTE THE COMPENSATION AS SET FORTH ON THE SCHEDULE. THE SCHEDULE OF COMPENSATION SHALL BE REASONABLE WITH RESPECT TO THE TIME AND COMPENSATION ALLOWED. THE REASONABLENESS OF THE SCHEDULE SHALL BE SUBJECT TO THE DETERMINATION OF THE BOARD, WHEN A FRANCHISEE OR DEALER ORGANIZATION FILES A NOTICE OF PROTEST WITH THE BOARD. IN DETERMINING THE REASONABLENESS OF THE SCHEDULE, THE BOARD SHALL CONSIDER ALL RELEVANT CIRCUMSTANCES; EXCEPT THAT THE BOARD SHALL DETERMINE TO BE UNREASONABLE ANY SCHEDULE THAT DOES NOT COMPENSATE THE FRANCHISEE AT THE FRANCHISEE'S CUSTOMARY RETAIL LABOR RATE FOR THE ACTUAL TIME REQUIRED BY A TECHNICIAN OF ORDINARY SKILL TO PERFORM EACH FUNCTION THAT THE FRANCHISEE IS OBLIGATED TO PERFORM.

(B) UPON DELIVERY OF A NEW MOTOR VEHICLE, THE FRANCHISEE SHALL GIVE TO THE PURCHASER A COPY OF THE DELIVERY AND PREPARATION OBLIGATIONS AND A WRITTEN CERTIFICATION THAT THE FRANCHISEE HAS FULFILLED THESE OBLIGATIONS.

Sec. 4517.54. (A) NOTWITHSTANDING THE TERMS, PROVISIONS, OR CONDITIONS OF AN EXISTING FRANCHISE, NO FRANCHISOR SHALL TERMINATE OR FAIL TO CONTINUE OR RENEW A FRANCHISE EXCEPT FOR GOOD CAUSE.

(B) EACH FRANCHISOR PROPOSING TO TERMINATE, DISCONTINUE, OR NOT RENEW A FRANCHISE SHALL SEND WRITTEN NOTICE OF THE PROPOSED ACTION TO THE FRANCHISEE AT SUCH TIME AS MAY BE NECESSARY TO ENSURE THAT THE NOTICE IS RECEIVED NO

S. B. No. 206    719

LATER THAN NINETY DAYS BEFORE THE EFFECTIVE DATE OF THE PROPOSED ACTION, OR NO LATER THAN FIFTEEN DAYS BEFORE THE EFFECTIVE DATE OF THE PROPOSED ACTION WHEN THE PROPOSED ACTION INVOLVES EITHER OF THE FOLLOWING:

(1) INSOLVENCY OF THE FRANCHISEE, OR FILING OF ANY PETITION BY OR AGAINST THE FRANCHISEE UNDER ANY BANKRUPTCY OR RECEIVERSHIP LAW;

(2) ANY UNLAWFUL BUSINESS PRACTICE AFTER WRITTEN WARNING THEREOF;

(3) THE FRANCHISEE HAS CEASED BUSINESS OPERATIONS.

EACH NOTICE SHALL SET FORTH THE SPECIFIC GROUNDS FOR THE PROPOSED TERMINATION OR REFUSAL TO CONTINUE OR RENEW.

(C) A FRANCHISEE RECEIVING WRITTEN NOTICE FROM A FRANCHISOR PROPOSING TO TERMINATE, DISCONTINUE, OR NOT RENEW A FRANCHISE MAY SEEK A PRELIMINARY AND PERMANENT INJUNCTION IN THE COMMON PLEAS COURT IN THE COUNTY IN WHICH THE FRANCHISEE'S DEALERSHIP IS LOCATED AGAINST THE TERMINATION, DISCONTINUANCE, OR NONRENEWAL OF SUCH FRANCHISE WITHOUT GOOD CAUSE.

Sec. 4517.55. (A) IN DETERMINING WHETHER GOOD CAUSE HAS BEEN ESTABLISHED BY THE FRANCHISOR FOR TERMINATING OR FAILING TO CONTINUE OR RENEW A FRANCHISE, THE COURT SHALL TAKE INTO CONSIDERATION THE EXISTING CIRCUMSTANCES, INCLUDING, BUT NOT LIMITED TO:

(1) THE AMOUNT OF BUSINESS TRANSACTED BY THE FRANCHISEE AS COMPARED TO THE BUSINESS AVAILABLE TO THE FRANCHISEE;

(2) THE INVESTMENT NECESSARILY MADE AND OBLIGATIONS INCURRED BY THE FRANCHISEE TO PERFORM ITS PART OF THE FRANCHISE;

(3) THE PERMANENCY OF THE FRANCHISEE'S INVESTMENT;

(4) WHETHER IT IS INJURIOUS OR BENEFICIAL TO THE PUBLIC WELFARE FOR THE FRANCHISE TO BE MODIFIED OR REPLACED, OR THE BUSINESS OF THE FRANCHISEE DISRUPTED;

(5) WHETHER THE FRANCHISEE HAS ADEQUATE MOTOR VEHICLE SALES AND SERVICE FACILITIES, EQUIPMENT, VEHICLE PARTS, AND QUALIFIED SERVICE PERSONNEL TO REASONABLY PROVIDE FOR THE NEEDS OF THE CONSUMERS FOR THE MOTOR VEHICLES

720

HANDLED BY THE FRANCHISEE, AND IS RENDERING ADEQUATE SERVICE TO THE PUBLIC;

(6) WHETHER THE FRANCHISEE FAILS TO FULFILL THE WARRANTY OBLIGATIONS OF THE FRANCHISOR REQUIRED TO BE PERFORMED BY THE FRANCHISEE;

(7) THE EXTENT OF THE FRANCHISEE'S FAILURE TO COMPLY WITH THE TERMS OF THE FRANCHISE.

(B) NOTWITHSTANDING THE TERMS, CONDITIONS, OR PROVISIONS OF ANY FRANCHISE, THE FOLLOWING DO NOT CONSTITUTE SUFFICIENT GOOD CAUSE FOR TERMINATING OR FAILING TO CONTINUE OR RENEW A FRANCHISE, ALTHOUGH THE COURT MAY CONSIDER THESE CIRCUMSTANCES AMONG OTHERS IN DETERMINING WHETHER GOOD CAUSE EXISTS:

(1) REFUSAL BY THE FRANCHISEE TO PURCHASE OR ACCEPT DELIVERY OF ANY NEW MOTOR VEHICLE, PARTS, ACCESSORIES, OR ANY OTHER COMMODITY OR SERVICE NOT ORDERED BY THE FRANCHISEE;

(2) THE FACT THAT THE FRANCHISEE OR THE OWNER OF ANY INTEREST THEREIN, OWNS, HAS AN INVESTMENT IN, PARTICIPATES IN THE MANAGEMENT OF, OR HOLDS A LICENSE FOR THE SALE OF ANOTHER MAKE OR LINE OF NEW MOTOR VEHICLE;

(3) THE SALE, TRANSFER, OR ISSUANCE OF ANY EQUITY OR DEBENTURE ISSUE, OR THE TRANSFER OR ISSUANCE OF ANY SECURITY OR SHARES OF STOCK IN A DEALERSHIP TO ANY PERSON, WHENEVER THE SALE, ISSUANCE, OR TRANSFER DOES NOT RESULT IN A CHANGE IN THE CONTROLLING OWNERSHIP OF THE DEALERSHIP;

(4) A CHANGE BY THE FRANCHISEE IN THE ADMINISTRATIVE OR EXECUTIVE MANAGEMENT OF THE DEALERSHIP.

Sec. 4517.56. (A) IF THE SALE OR TRANSFER OF ALL OR A CONTROLLING INTEREST IN A FRANCHISEE'S DEALERSHIP CONTEMPLATES OR IS CONDITIONED UPON A CONTINUATION OF THE FRANCHISE RELATIONSHIP WITH THE FRANCHISOR, AND THE PROPOSED TRANSFEREE HAS INDICATED A WILLINGNESS TO COMPLY WITH ALL OF THE REQUIREMENTS OF THE FRANCHISE THEN IN EFFECT, THE FRANCHISEE SHALL NOTIFY THE FRANCHISOR OF SUCH INTENTION BY WRITTEN NOTICE SETTING FORTH THE PROSPECTIVE TRANSFEREE'S NAME AND ADDRESS AND THE NAMES AND ADDRESSES OF THE TRANSFEREE'S PROSPECTIVE MANAGEMENT PERSONNEL. THE FRANCHISEE AND

721

PROSPECTIVE TRANSFEREE SHALL ALSO SUPPLY THE FRANCHISOR WITH SUCH OTHER INFORMATION REGARDING THE TRANSFEREE'S CHARACTER, BUSINESS EXPERIENCE, AND FINANCIAL ABILITY AS MAY BE REASONABLY REQUESTED BY THE FRANCHISOR TO ENABLE IT TO EVALUATE THE TRANSFEREE'S QUALIFICATIONS AND ABILITY TO COMPLY WITH THE REQUIREMENTS OF THE FRANCHISE THEN IN EFFECT. THE FRANCHISOR SHALL EVALUATE THE PROSPECTIVE TRANSFEREE AND THE TRANSFEREE'S PROSPECTIVE MANAGEMENT PERSONNEL ON THE BASIS OF REASONABLE AND OBJECTIVE CRITERIA FAIRLY AND OBJECTIVELY APPLIED.

(B) NO FRANCHISOR SHALL FAIL OR REFUSE TO APPROVE THE SALE OR TRANSFER OF ALL OR A CONTROLLING INTEREST IN A FRANCHISEE'S DEALERSHIP TO, OR REFUSE TO CONTINUE THE FRANCHISE RELATIONSHIP WITH, THE PROSPECTIVE TRANSFEREE WITHOUT GOOD CAUSE.

(C) THE FRANCHISOR SHALL PROVIDE THE FRANCHISEE AND THE PROSPECTIVE TRANSFEREE WITH WRITTEN NOTICE OF ANY REFUSAL TO APPROVE A SALE OR TRANSFER OF ALL OR A CONTROLLING INTEREST IN THE FRANCHISEE'S DEALERSHIP. THE NOTICE SHALL SPECIFY THE OBJECTIVE CRITERIA USED TO EVALUATE THE PROSPECTIVE TRANSFEREE AND THE CRITERIA WHICH THE TRANSFEREE FAILED TO MEET.

(D) WITHIN NINETY DAYS AFTER RECEIPT OF A NOTICE OF REFUSAL AS PROVIDED IN DIVISION (C) OF THIS SECTION, THE FRANCHISEE OR PROSPECTIVE TRANSFEREE MAY SEEK A MANDATORY INJUNCTION TO COMPEL APPROVAL OF THE PROPOSED TRANSFER IN THE COMMON PLEAS COURT OF THE COUNTY IN WHICH THE FRANCHISEE'S DEALERSHIP IS LOCATED, WHICH SHALL BE GRANTED BY THE COURT UPON FAILURE OF THE FRANCHISOR TO SHOW BY A PREPONDERANCE OF THE EVIDENCE THAT GOOD CAUSE EXISTS FOR REFUSAL TO APPROVE THE SALE OR TRANSFER.

(E) NOTWITHSTANDING THE TERMS, CONDITIONS, OR PROVISIONS OF A FRANCHISE, THE FOLLOWING DO NOT CONSTITUTE SUFFICIENT GOOD CAUSE FOR FAILING TO APPROVE A SALE OR TRANSFER TO, OR REFUSING TO CONTINUE THE FRANCHISE RELATIONSHIP WITH, A PROSPECTIVE TRANSFEREE, ALTHOUGH THE COURT MAY CONSIDER THESE CIRCUMSTANCES AMONG OTHERS IN DETERMINING WHETHER GOOD CAUSE EXISTS:

(1) THE FACT THAT THE PROSPECTIVE TRANSFEREE OR ANY PROSPECTIVE MANAGEMENT PERSONNEL DO NOT RESIDE WITHIN THE RELEVANT MARKET AREA OF THE AFFECTED DEALERSHIP;

(2) THE FACT THAT THE PROSPECTIVE TRANSFEREE DOES NOT INTEND TO BE EMPLOYED FULL TIME IN THE DEALERSHIP OPERATION;

(3) THE FACT THAT THE PROSPECTIVE TRANSFEREE, OR THE OWNER OF ANY INTEREST THEREIN, OWNS, HAS AN INVESTMENT IN, PARTICIPATES IN THE MANAGEMENT OF, OR HOLDS A LICENSE FOR THE SALE OF ANOTHER MAKE OR LINE OF NEW MOTOR VEHICLE OR FOR THE SALE OF THE SAME MAKE OF NEW MOTOR VEHICLE AT ANOTHER LOCATION.

Sec. 4517.57. (A) UPON RECEIVING A NOTICE OF PROTEST PURSUANT TO SECTION 4517.50, 4517.52, OR 4517.53 OF THE REVISED CODE, THE MOTOR VEHICLE DEALERS BOARD SHALL SET A TIME, WHICH SHALL BE WITHIN SIXTY DAYS OF SUCH ORDER, AND PLACE OF HEARING AND SEND BY CERTIFIED MAIL A COPY OF THE ORDER TO THE FRANCHISOR, THE PROTESTING FRANCHISEE OR DEALER ORGANIZATION, AND ALL INDIVIDUALS AND GROUPS THAT HAVE REQUESTED NOTIFICATION BY THE BOARD OF PROTESTS TO AND DECISIONS OF THE BOARD. SUBJECT TO SECTIONS 119.01 TO 119.13 OF THE REVISED CODE, THE BOARD SHALL DESIGNATE AN ATTORNEY AT LAW AS A HEARING OFFICER, WHO SHALL HEAR AND CONSIDER THE ORAL AND DOCUMENTED EVIDENCE INTRODUCED BY THE PARTIES AND OTHER INTERESTED INDIVIDUALS AND GROUPS, AND ISSUE HIS FINDINGS AND RECOMMENDATIONS TO THE BOARD WITHIN THIRTY DAYS FOLLOWING THE CLOSE OF THE HEARING.

(B) IN ANY HEARING ON A PROTEST FILED PURSUANT TO SECTION 4517.50 OF THE REVISED CODE, THE FRANCHISOR SHALL HAVE THE BURDEN OF GOING FORWARD WITH THE EVIDENCE TO ESTABLISH THAT THERE IS GOOD CAUSE FOR THE FRANCHISOR NOT TO ENTER INTO A FRANCHISE ESTABLISHING OR RELOCATING AN ADDITIONAL MOTOR VEHICLE DEALERSHIP.

(C) IN ANY HEARING ON A PROTEST FILED PURSUANT TO SECTION 4517.52 OR 4517.53 OF THE REVISED CODE, THE FRANCHISEE OR DEALER ORGANIZATION SHALL HAVE THE BURDEN OF GOING FORWARD WITH THE EVIDENCE TO ESTABLISH THAT THE WARRANTY

AND RECALL REIMBURSEMENT SCHEDULES OR FORMULAS OR THE SCHEDULE OF COMPENSATION IS NOT REASONABLE.

(D) ONLY THE PUBLIC MEMBERS OF THE BOARD AND THE HEARING OFFICER DESIGNATED BY THE BOARD SHALL PARTICIPATE IN, DELIBERATE ON, HEAR, CONSIDER, OR DECIDE ANY MATTER INVOLVING A PROTEST FILED PURSUANT TO SECTION 4517.50, 4517.51, AND 4517.52 OF THE REVISED CODE. THE PUBLIC MEMBERS SHALL ACT BY MAJORITY VOTE.

(E) IN ANY HEARING ON A PROTEST FILED UNDER SECTION 4517.50, 4517.51, OR 4517.52 OF THE REVISED CODE, THE HEARING OFFICER SHALL PERMIT THE PARTIES OF CROSS EXAMINATION.

Sec. 4517.58. THE DECISION OF THE MOTOR VEHICLE DEALERS BOARD ON ANY MATTER HEARD UNDER SECTION 4517.57 OF THE REVISED CODE SHALL BE IN WRITING AND SHALL CONTAIN FINDINGS OF FACT AND A DETERMINATION OF THE ISSUES PRESENTED. IF THE BOARD FAILS TO ACT WITHIN THIRTY DAYS AFTER THE BOARD RECEIVES A PROPOSED DECISION FROM THE HEARING OFFICER OR WITHIN ANY LONGER PERIOD MUTUALLY AGREED UPON BY THE PARTIES, THE PROPOSED DECISION SHALL BE CONSIDERED APPROVED. COPIES OF THE DECISION SHALL BE DELIVERED TO THE PARTIES PERSONALLY OR BY REGISTERED MAIL AND SHALL ALSO BE DELIVERED TO ALL INDIVIDUALS AND GROUPS THAT HAVE REQUESTED NOTIFICATION BY THE BOARD OF PROTESTS TO AND DECISIONS OF THE BOARD. THE DECISION SHALL BE FINAL UPON ITS DELIVERY OR MAILING, EXCEPT THAT ANY PERSON ADVERSELY AFFECTED BY THE DECISION MAY APPEAL IN THE MANNER PROVIDED BY SECTIONS 119.01 TO 119.13 OF THE REVISED CODE.

Sec. 1333.72 4517.59. Notwithstanding the terms, provisions, or conditions of any agreement or franchise, no manufacturer engaged in the sale and distribution of motor vehicles, the torcycles, or any self-contained vehicle with an internal combustion engine, or an affiliate, division, or subsidiary of any such manufacturer, FRANCHISOR shall:

(A) In acting or purporting to act under the terms, provisions, or conditions of an agreement or A franchise or in terminating, cancelling CANCELING, or failing to renew a franchise, fail to act in good faith;

(B) Prevent a dealer FRANCHISEE from changing administrative or executive management other than the principal

S. B. No. 206

724

officer or operator of a dealer if the franchise was granted in reliance upon the personal ability of such person, PROVIDED SUCH PERSONNEL SATISFY REASONABLE AND OBJECTIVE STANDARDS FORMULATED AND OBJECTIVELY APPLIED BY THE FRANCHISOR;

(C) Restrict the sale of any equity or debenture issue or the transfer of any securities in a dealership, or in any way prevent or attempt to prevent the transfer, sale, or issuance of shares of stock or debentures to employees, personnel of the dealership, or heirs of the principal owner, so long as ANY PERSON, IF THE basic financial requirements of the manufacturer FRANCHISOR have been equalled at the time of the execution of the franchise agreement and continued in effect, and provided any such IF THE sale, transfer, or issuance does not have the effect of accomplishing a sale of the franchise or removes control of the dealership from the principal officer or operator of said A CONTROLLING INTEREST IN THE dealership;

(D) Coerce or threaten any dealer FRANCHISEE by refusing or failing to renew, or extend, a lease of premises where the fee or right of possession is in the absolute control of the manufacturer FRANCHISOR and such dealer THE FRANCHISEE upon request or demand of the manufacturer FRANCHISOR fails to expand its facilities, increase sales personnel, purchase more parts or accept programs for sales and operation of dealer's THE FRANCHISEE'S business, when such demand is not reasonable, fair, and equitable under all circumstances, and tends to depreciate the dealer's FRANCHISEE'S equity;

(E) Sell, lease, or rent goods, OR motor vehicles, or to render any service normally performed and required of dealers FRANCHISEES under the franchise agreement with the manufacturer FRANCHISOR, in unfair competition with such dealer THE FRANCHISEE, except that this division does not apply to a sale, lease, or rental to, or service performed for, an agency of federal, state, or local government;

(F) Coerce, or attempt to coerce, any dealer FRANCHISEE to accept delivery of any motor vehicle, parts, accessories, or any other commodities connected therewith which are not ordered by said dealer FRANCHISEE; nor withhold or delay delivery of motor vehicles out of the ordinary course of business; nor discriminate against any dealer FRANCHISEE in the allocation or through the withholding from delivery of certain models of motor vehicles ordered by a dealer FRANCHISEE out of the ordinary course of business; nor unfairly change or amend unilaterally a dealer's FRANCHISEE'S allotment of motor vehicles or quota in a sales contest without reasonable cause; nor coerce a dealer FRANCHISEE by any means

S. B. No. 206

725

to participate or contribute to any local or national advertising fund controlled directly or indirectly by the manufacturer FRANCHISOR; nor employ any coercive techniques for any other purposes such as obtaining dealer FRANCHISEE participation in contests, "giveaways," or other sales devices;

(G) Coerce, attempt to coerce a dealer, or act other than honestly in accordance with reasonable standards for fair dealings, with respect to the dealer's right to sell, assign, transfer, or otherwise dispose of his business, in all or in part; provided, however, the dealer shall have no right to sell, assign, or transfer the franchise without the manufacturer's consent;

(H) Coerce, or attempt to coerce, a dealer FRANCHISEE by threatening to award an additional franchise or agreement to another person for the sale of its same product in the same area of influence for the purposes of compelling such dealer FRANCHISEE to yield to demands of the manufacturer FRANCHISOR for increased sales of manufacturer's THE FRANCHISOR'S products, parts, expansion of facilities and improvement of operations inconsistent with good business practices of the dealer provided, however, that nothing herein contained shall limit a manufacturer's right to award additional franchises where it has reasonably been determined by a manufacturer that such would be in the best interests of the public to ensure it of satisfactory and convenient sales and service facilities FRANCHISEE;

(H) FAIL TO EITHER RETURN A PART TO THE FRANCHISEE, AT THE FRANCHISOR'S EXPENSE, OR REIMBURSE THE FRANCHISEE FOR THE FRANCHISEE'S COST OF THE PART WHERE A FRANCHISOR DOES NOT APPROVE A FRANCHISEE'S CLAIM FOR A DEFECTIVE PART;

(I) FAIL TO APPROVE OR DISAPPROVE ANY WARRANTY OR RECALL CLAIM SUBMITTED BY A FRANCHISEE WITHIN FORTY-FIVE DAYS AFTER RECEIPT FROM THE FRANCHISEE. IF A CLAIM IS NOT APPROVED, THE FRANCHISOR SHALL IMMEDIATELY SO NOTIFY IN WRITING THE FRANCHISEE WHO SUBMITTED THE CLAIM AND SHALL INCLUDE IN THE NOTICE THE SPECIFIC GROUNDS UPON WHICH THE DISAPPROVAL IS BASED.

(J) FAIL TO PAY A FRANCHISEE WITHIN THIRTY DAYS AFTER APPROVAL BY THE FRANCHISOR OF ANY CLAIM BY A FRANCHISEE FOR LABOR AND PARTS MADE UNDER SECTION 4517.52 AND 4517.53 OF THE REVISED CODE. ANY FAILURE OF A FRANCHISOR TO ACT ON OR PAY A CLAIM WITHIN THE TIME LIMITS

S. B. No. 206

726

SPECIFIED BY THIS SECTION THAT RESULTS FROM CAUSES BEYOND THE FRANCHISOR'S REASONABLE CONTROL DOES NOT CONSTITUTE A VIOLATION OF THIS SECTION.

(K) DISCLAIM AN OTHERWISE VALID WARRANTY OR RECALL CLAIM BECAUSE THE FRANCHISEE FAILS TO SUBMIT OR RESUBMIT THE CLAIM WITHIN A PERIOD OF LESS THAN SIX MONTHS FROM THE DATE ON WHICH THE SERVICE WAS RENDERED OR PARTS SUPPLIED.

Sec. 4517.60. NOTWITHSTANDING THE TERMS, CONDITIONS, OR PROVISIONS OF ANY FRANCHISE, EACH FRANCHISOR SHALL INDEMNIFY AND HOLD HARMLESS ITS FRANCHISEES AGAINST ANY LOSSES, INCLUDING, BUT NOT LIMITED TO, COURT COSTS AND ATTORNEY FEES REASONABLY INCURRED, OR DAMAGES ARISING OUT OF COMPLAINTS, CLAIMS, OR SUITS, WHETHER OR NOT MERITORIOUS, RELATING IN WHOLE OR IN PART TO THE MANUFACTURE, ASSEMBLY, OR DESIGN OF MOTOR VEHICLES, PARTS, OR ACCESSORIES, TO DAMAGE CORRECTED BY THE FRANCHISOR PRIOR TO RECEIPT OF A MOTOR VEHICLE BY THE FRANCHISEE, OR RELATING TO OTHER FUNCTIONS OF THE FRANCHISOR BEYOND THE CONTROL OF THE FRANCHISEE, INCLUDING, BUT NOT LIMITED TO, THE SELECTION BY THE FRANCHISOR OF PARTS OR COMPONENTS FOR THE MOTOR VEHICLE AND ANY DAMAGE TO MERCHANDISE OCCURRING IN TRANSIT TO THE FRANCHISEE WHERE THE CARRIER IS DESIGNATED BY THE FRANCHISOR. THE FRANCHISEE SHALL GIVE NOTICE TO THE FRANCHISOR WITHIN TWENTY DAYS OF SERVICE OF SUMMONS ON THE FRANCHISEE OF PENDING SUITS IN WHICH ALLEGATIONS ARE MADE THAT COME WITHIN THIS SECTION AND SHALL COOPERATE WITH THE FRANCHISOR IN THE DEFENSE OF SUCH SUITS.

Sec. 4517.61. EACH FRANCHISOR SHALL DISCLOSE TO ITS FRANCHISEES IN WRITING PRIOR TO OR AT THE TIME OF DELIVERY OF ANY NEW MOTOR VEHICLE ANY DAMAGE TO THE MOTOR VEHICLE THAT HAS BEEN CORRECTED AFTER COMPLETION OF THE MANUFACTURING PROCESS AND EXCEEDS SIX PER CENT OF THE FRANCHISOR'S SUGGESTED RETAIL PRICE OF THE MOTOR VEHICLE, AS MEASURED BY RETAIL REPAIR COSTS. EACH FRANCHISEE SHALL PROVIDE THE PURCHASER OF ANY SUCH REPAIRED MOTOR VEHICLE WITH A COPY OF THE FRANCHISOR'S DAMAGE DISCLOSURE STATEMENT. DAMAGE TO GLASS, TIRES AND

S. B. No. 206

727

BUMPERS IS EXCLUDED FROM THE SIX PER CENT WHEN REPLACED BY IDENTICAL MANUFACTURER'S ORIGINAL EQUIPMENT.

Sec. ~~1222.76~~ 4517.62. A ~~dealer~~ FRANCHISEE having ~~an agreement or~~ A franchise shall maintain adequate physical facilities and personnel so that the ~~manufacturer's~~ FRANCHISOR'S product is at all times properly represented in the ~~dealer's~~ FRANCHISEE'S sales area so that the reputation and trade mark of the ~~manufacturer~~ FRANCHISOR shall be protected and so that the general public will receive adequate servicing of ~~manufacturer's~~ THE FRANCHISOR'S products, and said ~~dealer~~ FRANCHISEE shall act at all times in good faith.

Sec. ~~1222.76~~ 4517.63 All actions of the ~~manufacturer~~ FRANCHISOR or its officers, agents, or employees with respect to the creation, modification, interpretation, or termination of the franchise ~~or agreement~~, or failure to renew or extend such ~~agreement~~ THE FRANCHISE or the original investment or the increasing or supplementing of the investment by the ~~dealer~~ FRANCHISEE in the ~~agreement or~~ franchise and its stipulations as to facilities, purchases of goods, vehicles, accessories, parts, or commodities by the ~~dealer~~ FRANCHISEE from the ~~manufacturer~~ FRANCHISOR, the sufficiency of the ~~dealer's~~ FRANCHISEE'S performance as a ~~dealer~~ FRANCHISEE, advertising and promotional activity by the ~~dealer~~ FRANCHISEE, and the ~~dealer's~~ FRANCHISEE'S right to sell, assign, or transfer, or otherwise dispose of his business, shall be in writing and signed by the authorized representative of the ~~manufacturer~~ FRANCHISOR.

Sec. 4517.64. NO FRANCHISOR SHALL:

(A) FAIL TO OBEY A REQUIREMENT OR ORDER MADE BY THE MOTOR VEHICLE DEALERS BOARD, OR THE ORDER OF ANY COURT UPON APPLICATION OF THE BOARD;

(B) FAIL TO PERFORM A DUTY IMPOSED UPON IT BY SECTIONS 4517.50 TO 4517.65 OF THE REVISED CODE, OR DO ANY ACT PROHIBITED BY THOSE SECTIONS.

Sec. 4517.65. (A) WHEN A FRANCHISOR DOES, CAUSES, OR PERMITS TO BE DONE ANYTHING PROHIBITED BY SECTIONS 4517.50 TO 4517.65 OF THE REVISED CODE, OR FAILS TO PERFORM ANY DUTY IMPOSED UPON IT BY THOSE SECTIONS, THE FRANCHISOR SHALL BE LIABLE TO THE FRANCHISEE IN DOUBLE THE AMOUNT OF ACTUAL DAMAGES SUSTAINED, PLUS COURT COSTS AND REASONABLE ATTORNEY FEES.

(B) WHEN A FRANCHISOR TERMINATES, CANCELS, OR FAILS TO RENEW A FRANCHISE WITHOUT THE

S. B. No. 206

728

PRIOR CONSENT OF THE FRANCHISEE, FOR OTHER THAN GOOD CAUSE, THE FRANCHISOR, IN LIEU OF RESPONDING IN DAMAGES AS PROVIDED IN DIVISION (A) OF THIS SECTION, SHALL PURCHASE FROM THE FRANCHISEE AT FULL AND FAIR MARKET VALUE, ALL OR ANY PORTION OF THE LAND, BUILDING, MACHINERY, MATERIALS, FACILITIES, EQUIPMENT, AND LEASEHOLD INTEREST OF THE FRANCHISEE REASONABLY UTILIZED IN THE MARKETING OF THE FRANCHISOR'S GOODS, COMMODITIES, OR SERVICES WHERE THE FACILITIES HAVE BEEN PREVIOUSLY APPROVED BY THE FRANCHISOR, AND SHALL PURCHASE FROM THE FRANCHISEE ALL OR ANY PORTION OF THE FRANCHISEE'S INVENTORY OF GOODS, SPECIALIZED TOOLS, AND SALES AIDS REQUIRED BY THE FRANCHISOR AND ALL CURRENT PARTS AND ACCESSORIES PURCHASED BY THE FRANCHISEE IN ACCORDANCE WITH THE REQUIREMENTS OF THE FRANCHISOR AT THE NET COST LESS FREIGHT AND CARTAGE, PROVIDED THAT UPON PAYMENT THEREFOR THE FRANCHISEE SHALL TRANSFER TO THE FRANCHISOR GOOD TITLE TO ALL SUCH PROPERTY FREE AND CLEAR OF LIENS AND ENCUMBRANCES.

(C) A FRANCHISEE MAY IN LIEU OF SEEKING DAMAGES UNDER THIS SECTION, SEEK A PERMANENT INJUNCTION IN THE COMMON PLEAS COURT OF THE COUNTY IN WHICH THE FRANCHISEE'S DEALERSHIP IS LOCATED AGAINST THE THREATENED LOSS, DAMAGE, OR INJURY TO THE FRANCHISEE'S BUSINESS OR PROPERTY BY VIOLATION OF SECTIONS 4517.50 TO 4517.65 OF THE REVISED CODE OR THE THREATENED CANCELLATION, TERMINATION, OR FAILURE TO RENEW A FRANCHISE BY THE FRANCHISOR.

(D) WHEN A FRANCHISOR TERMINATES, CANCELS, OR FAILS TO RENEW A FRANCHISE, THE BURDEN OF PROOF TO ESTABLISH THE FRANCHISOR'S GOOD CAUSE SHALL BE ON THE FRANCHISOR IN ACTIONS INSTITUTED UNDER THIS SECTION AND SECTION 4517.54 OF THE REVISED CODE.

(E) NOTHING IN THIS CHAPTER SHALL BE CONSTRUED OR APPLIED TO PROHIBIT A FRANCHISOR FROM IMPLEMENTING IN GOOD FAITH ANY LAWFUL AFFIRMATIVE ACTION PROGRAM DESIGNED TO PROVIDE BUSINESS OPPORTUNITIES FOR WOMEN AND MINORITIES.

---

S. B. No. 206

729

Sec. 4517.99. (A) Whoever violates sections 4517.01 to 4517.42 4517.65 of the Revised Code, for which no penalty is otherwise provided in this section, or any rule promulgated by the registrar of motor vehicles or the motor vehicle dealers and salespersons' licensing DEALERS board under sections 4517.01 to 4517.45 of the Revised Code, is guilty of a misdemeanor of the fourth degree.

(B) Whoever violates sections 4517.43 to 4517.45 of the Revised Code is guilty of a minor misdemeanor.

(C) Whoever violates section 4517.02 of the Revised Code is guilty of a minor misdemeanor on a first offense; on each subsequent offense such person is guilty of a misdemeanor of the first degree.

SECTION 2. That existing sections 1333.72, 1333.75, 1333.76, 4517.01, 4517.13, 4717.14, 4517.15, 4517.22, 4517.23, 4517.24, 4517.25, 4517.30, 4517.31, 4517.32, 4517.33, 4517.34, 4517.43, and 4517.99, and sections 1333.71, 1333.73, 1333.74, 1333.77, and 1333.78 of the Revised Code are hereby repealed.

_____
Speaker _____ of the House of Representatives.

_____
President _____ of the Senate.

S. B. No. 206

730

Passed November 29, 1979

Approved December 14, 1979

*[signature]*
Governor.

The section numbering of law of a general and permanent nature is complete and in conformity with the Revised Code.

*[signature]*
Director, Legislative Service Commission.

Filed in the office of the Secretary of State at Columbus, Ohio, on the 14th day of December A.D. 1979.

*[signature]*
Secretary of State

File No. 175

Effective Date March 14, 1980

731

(Amended Senate Bill No. 206)

# AN ACT

To amend section 4163.01 and to enact sections 4163.07 and 4163.99 of the Revised Code to require notification of certain state and local officials prior to shipments of large quantities of special or by-product nuclear materials into or through the state, and to declare an emergency.

*Be it enacted by the General Assembly of the State of Ohio:*

SECTION 1. That section 4163.01 be amended and sections 4163.07 and 4163.99 of the Revised Code be enacted to read as follows:

Sec. 4163.01. As used in sections 4163.01 to 4163.03, inclusive, CHAPTER 4163. of the Revised Code:

(A) "Atomic energy" means all forms of energy released in the course of nuclear fission or nuclear transformation.

(B) "By-product material" means any radioactive material (except special nuclear material) yielded in, or made radioactive by exposure to the radiation incident to, the process of producing or utilizing special nuclear materials.

(C) "Production facility" means any equipment or device capable of the production of special nuclear material in such quantity as to be of significance to the common defense and security, or in such manner as to affect the health and safety of the public; or any important component part especially designed for such equipment or device.

(D) "Special nuclear material" means plutonium or uranium enriched in the isotope 233 or in the isotope 235, or any other material which the governor declares by order to be special nuclear material.

(E) "Utilization facility" means any equipment or device, except an atomic weapon, capable of making use of special nuclear materials in such quantity as to be of significance to the common defense and security, or in such manner as to affect the