UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **KINGS DODGE, INC. d/b/a** ) | |
| **KINGS DODGE/CHRYSLER/JEEP** ) | Civil Action No. 1:12-cv-445 |
| ) | Judge Timothy S. Black |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| **CHRYSLER GROUP, LLC** ) | |
| ) | |
| Defendant. ) | |
| ) | |

## CHRYSLER GROUP'S OPPOSITION TO KINGS' MOTION FOR RECONSIDERATION[1]

The Court should deny the plaintiff's motion for reconsideration of the judgment entered on November 27, 2013("Judgment") (Doc. No. 55) granting the motion for summary judgment filed by the defendant, Chrysler Group LLC ("Chrysler Group"), and denying the motion for summary judgment filed by the plaintiff, Kings Dodge, Inc. d/b/a Kings Dodge/Chrysler/Jeep ("Kings").  The Court also should deny Kings' motion for reconsideration of the order issued by the Court on November 27, 2013 in connection with the Judgment ("Order") (Doc. No. 54). Kings has fallen far short of meeting the stringent legal standard governing motions for reconsideration:  it has failed to identify any newly-discovered evidence, any intervening change in the law, or any clear error of law that will result in manifest injustice if not corrected.  *See Gencorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999).  Rather, Kings is seeking merely to re-litigate issues already decided against it, and to repeat arguments already

---

[1] Kings' arguments are mere repetitions of its prior submission to which Chrysler Group previously has responded. Accordingly, Chrysler Group sees no benefit to this Court in responding to all of these same arguments again.  Instead, Chrysler Group has focused its arguments on the principal assertions made in Kings' motion for reconsideration and has not burdened this Court with responses to other arguments that are either immaterial or have been responded to before in prior filings.  Chrysler Group's silence on certain of Kings' arguments should not be construed as agreement.

considered and rejected by the Court. *See Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). Indeed, Kings admits explicitly in its supporting memorandum that it is repeating arguments made in its earlier briefs. (*See* Kings' Memorandum In Support of Motion ("Motion to Reconsider") at 4 ("Thus, as argued by Kings Dodge in its earlier briefs to this Court"); *Id.* at 9 ("As Kings Dodge pointed out to this Court in its earlier briefs"); *Id.* at 10 ("Similarly, as Kings Dodge has previously pointed out to this Court"); *Id.* at 16 ("Plaintiff's point to this Court in its earlier briefs").) The law governing motions under Federal Rule of Civil Procedure 59(e) does not permit the "second bite of the apple" that Kings seeks to take and therefore the Court should deny Kings' motion for failure to satisfy the standard governing such motions.

## ARGUMENT

I. **Kings Has Failed To Establish Any Ground Warranting Reconsideration Of The Judgment Or The Order.**

The Sixth Circuit recognizes only three grounds upon which reconsideration is appropriate: 1) newly-discovered evidence; 2) an intervening change in controlling law; or 3) correction of a clear error of law that is necessary to prevent manifest injustice. *See Gencorp, Inc.*, 178 F.3d at 834. The reconsideration of a judgment, as requested by Kings, is an extraordinary remedy that should only be used sparingly. *See Vanguard Transp. Sys. v. Volvo Trucks N. Am. Inc.*, No. 2:04-cv-889, 2006 WL 3097189 (S.D. Ohio 2006).

Notably, motions for reconsideration may not be used as a vehicle for re-litigating issues already decided by the Court or "regurgita[ting] arguments previously presented or present[ing] arguments which originally could have been argued." *Id.* at *2 (quoting *U.S. v. Limited, Inc.*, 179 F.R.D. 541, 547 (S.D. Ohio 1988)); *see also Sault*, 146 F.3d at 374 ("A motion under Rule 59(e) is

not an opportunity to re-argue a case."); *Dana Corp. v. U.S.*, 764 F. Supp. 482, 489 (N.D. Ohio 1991) (finding that Defendant's attempt to obtain a "complete reversal of our judgment by offering essentially the same arguments presented in his initial motion for summary…is an inappropriate invocation of Fed. R. Civ. P. 59(e)"). And, evidence that was available to a party at the time that summary judgment motions were filed cannot be introduced for the first time in a motion for reconsideration of a judgment. *See Shah v. NXP Semiconductors USA, Inc.*, 507 Fed. App'x 483, 495 (6th Cir. 2012). The purpose of Rule 59(e) is not to provide "an unhappy litigant one additional chance to sway the judge." *Dana Corp.*, 764 F. Supp. at 489 (quoting *Durkin v. Taylor*, 444 F. Supp. 879 (E.D. Va. 1977)).

Kings' motion appears to be limited to the ground of clear error of law that allegedly will result in a manifest injustice if not corrected. (*See* Motion to Reconsider at 1 ("Kings Dodge submits that this Court committed clear error in several areas of its November 27, 2013 Order … and that the granting of this motion is necessary to prevent manifest injustice.").) However, Kings has failed to establish any error made by the Court, let alone the type of clear error of law that is required by law. *See In re Nosker*, 267 B.R. 555, 565 (Bankr. S.D. Ohio 2001) (burden is on the moving party to demonstrate clear error of law). Rather, Kings does nothing more than express its disagreement with the Court's legal interpretation of ORC 4517.52 by rearguing the same points that were previously considered and properly rejected by this Court. The Court should deny Kings' motion.

## II. The Court Correctly Ruled That ORC 4517.52 Does Not Require Chrysler Group To Pay Kings For The Fixed Repair Time Unilaterally Established By Kings.

Despite this Court's prior rejection of Kings' interpretation of ORC 4517.52, Kings makes the same argument here that it made in its summary judgment papers: namely, that ORC 4517.52

3

requires Chrysler Group to not only pay Kings for warranty work at "rates not less than the rates charged by [Kings] to its retail customers" but also to pay for the *length of repair time* that Kings unilaterally establishes for each of its repairs regardless of the actual time that it takes Kings to complete the repair. (Motion to Reconsider at 1-2; Kings' Mem. In Support Of Motion for Summ. J. ("Kings MSJ") at 20-25 (Doc. 36); Kings' Mem. Opp. Def. Mot. Summ. J. ("Kings Opposition") at 5-7 (Doc. 45); Kings' Reply Mem. In Support Of Mot. For Summ. J. ("Kings Reply") at 5-7 (Doc. 52).) The Court appropriately refused to interpret ORC 4517.52 in this fashion in its Order and Kings has come forward with no reason whatsoever why the Court should change its mind the second time around. The Court was correct before, and would be correct again, in finding that "if the legislature had intended to require a manufacturer to pay a dealer for whatever fixed time a dealer applied to a repair, the legislature would have said so in the plain language of the statute." (Order at 24.)[2] The Court properly interpreted the plain language of the statute,[3] refused to add words that were not there, and properly drew guidance for its interpretation from well-settled canons of statutory construction (Order at 22-23), relevant Ohio case law interpreting the word "rate" (Order

---

[2] Kings recognizes the same distinction between labor rate and repair time articulated by this Court in the Order. Well before filing this suit, in a letter to Chrysler Group, Kings admitted that the labor rate referred to in ORC 4517.52 meant dollars per hour, and the repair time was a separate concept and not part of the rate (*See* Ex. 6 to Chrysler Group's Motion for Summary Judgment ("Chrysler Group MSJ") (Doc. 39-8) ("Thank you for increasing Kings Dodge warranty labor rate to $84.07 … The labor rate meets part of the requirement, but does not address the time allowed for non-warranty work.").

[3] Kings misstates the language used in the Order when it argues that the Court interpreted the word "rate" under the statute one way for labor and another way for parts. This Court did not "accept[] that the franchisor must pay its franchisees the same 'amount' for warranty parts that the franchisee charges its retail customers for the same parts" as Kings now alleges. (Motion to Reconsider at 6-7.) To the contrary, the Court repeatedly stated that parts should be reimbursed at the same *rate* and that the *rate* established by Chrysler Group was cost plus a 59.13% markup. (Order at 31-33.)

at 24), and the amendment to ORC 4517.52 demonstrating the deletion of "repair time" language from the statute. (Order at 20-22.)[4]

The Court's review of the 1987 amendment to the statute was particularly appropriate because that amendment deleted the provision in the prior version of the statute that regulated "repair time." (Order at 21-22; Ex. 1 to Chrysler Group's Memo. In Opp. To Kings Dodge Inc.'s Mot. Summ. J. ("Chrysler Group's Opposition") (Doc. 46-1).) Despite this deletion of "repair time" language, Kings argued in its summary judgment papers, and again argues here in its motion for reconsideration, that ORC 4517.52 requires Chrysler Group to accept and pay for the amount of time established by Kings for each warranty repair.. Based on well-settled canons of statutory construction, the Court correctly viewed this amendment as purposeful and refused to insert language regarding repair time that was previously removed from the statute. (Order at 21 citing *Lynch v. Gallia Ct. Bd. Of Commrs.*, 79 Ohio St.3d 251, 254; 680 N.E. 2d 1222, 1224 (1997) (a reviewing court must not construe a statute so as to supply words that are omitted by an amendment).) The Court also properly concluded that the legislature's election to retain the repair time language in one section and delete it from another section served as additional support for its interpretation of ORC 4517.52 as not requiring it to pay a Kings a fixed repair time for each of Kings' warranty repairs. *See* ORC 4517.53(A); (Order at 21-22 citing 2A

---

[4] Kings again repeats its erroneous argument that the remedial nature of this statute requires the Court to accept Kings' interpretation simply because Kings is a dealer to which the statute grants certain rights. The Court properly rejected this argument finding that the statute is designed to protect dealers *and* consumers and forcing manufacturers to pay artificially inflated prices for repairs that are not based on the actual time it takes to perform the repair does nothing to further the statute's purpose of "incentiviz[ing] manufacturers to keep consumer prices low." (Order at 19.) Kings suggestion that Chrysler Group is "extracting an unlawful discount" from Kings which is "driving up the cost of retail repairs" for consumers is flatly wrong. (Motion to Reconsider at 9.) It is Kings, not Chrysler Group, who is driving up the cost of retail repairs for consumers by overcharging its retail customers through the use of flat times that have no relationship to the actual length of time it takes to perform a repair.

5

Sutherland Statutory Construction 46:6 (7th Ed.) ("where the legislature has employed a term in one place and excluded it in another, it should not be implied where excluded.").)

Notwithstanding the Court's thorough analysis and proper reading of the statute's plain language, Kings attempts to characterize the Court's interpretation as a clear error of law based on what Kings refers to as the "legislative history" of the 1987 amendment. (Motion to Reconsider at 1-6.) The Court should reject Kings' argument for several reasons. First, Kings raised this same argument in its prior briefings and the Court properly rejected it. Kings cannot use the reconsideration process to repeat its arguments. *See, e.g., U.S. v. Limited, Inc.*, 179 F.R.D. at 547. Second, the majority of the documents that Kings characterizes as "legislative history" were considered by this Court before it rendered its Order and entered the Judgment granting Chrysler Group's motion for summary judgment. (*See* Ex 1 to Chrysler Group's Opposition; Amicus Curiae Brief By Alliance of Automobile Manufacturers In Support Of Chrysler Group's Motion for Summary Judgment (Doc. No. 51).) There is no reason why the Court should again review these same documents and, in any event, they provide no support for Kings' argument. Third, because the documents now relied on by Kings existed at the time of its briefings on summary judgment, they are not "newly-discovered evidence" and cannot justify reconsideration of this Court's order. *See Gencorp.*, 178 F.3d at 834 ("to constitute 'newly-discovered evidence,' the evidence must have been previously unavailable.").[5]

---

[5] The testimony relied on by Kings is improperly before this Court and should be excluded from the record because Kings has offered this testimony for the first time on its motion for reconsideration. Motions to reconsider are not a "vehicle for submitting evidence which in the exercise of reasonable diligence could have been submitted before." *Keweenaw Bay Indian Cmty. v. State of Mich.*, 152 F.R.D. 562, 563 (W.D. Mich. 1992); *see also Basinger v. CSX Transp., Inc.*, 1996 WL 400182, at * 3 (6th Cir. 1996) ("It is not an abuse of discretion for a district court to decline to consider a Rule 59(e) motion in which the movant attempts to submit evidence that was available at the time the movant was contesting a summary judgment motion.").

Even if the Court considered this testimony, it is a statement of a single person; it is not "legislative history" as alleged by Kings, and it certainly does not establish a clear error of law. (Ex. 1 to Motion to Reconsider.) Rather, the document upon which Kings relies is the written statement of a non-legislator and apparent proponent of the amendment[6] that does little more than repeat the words of the amendment and offer that person's opinion that the amendment would "simplify and strengthen the obligation upon franchisors to compensate its [sic] franchisees for labor and parts used to fulfill warranty and recall obligations at rates not less than the rates charged by the franchisees to its retail customers for like service and parts for non-warranty work." (*Id*.) Notably, the statements relied on by Kings offer no commentary whatsoever on the deletion of the "repair time" language identified by the Court,[7] and clearly do not support Kings' argument that ORC 4517.52 requires Chrysler Group to pay Kings for whatever fixed amount of repair time that Kings demands.[8] Indeed, Kings is asking this Court to pretend that the legislature did not remove the repair time language from the statute and instead did nothing more than delete the Board's role. Even a cursory review of the deleted language shows that Kings' contention is baseless.[9]

---

[6] In fact, an online search suggests he was a one-time lobbyist and counsel for the Ohio Automobile Dealers Association. He can hardly be considered an unbiased commentator.

[7] Kings makes the incredible argument that the *absence* of any comment in the legislative record about the 1987 deletion of "repair time" language from ORC 4517.52 means that the deletion must have had no effect on the statute's regulation of "repair time." This mere conjecture should be summarily rejected.

[8] Kings' contention that without flat rate manuals it would be "literally impossible" to provide consumers with a reliable estimate is flatly wrong. There is nothing prohibiting Kings from using the actual times published by Chrysler Group when providing written estimates to its Chrysler Group customers.

[9] Kings erroneously suggests that the Amicus Brief of the Alliance of Automobile Manufacturers misstated the testimony of a FTC witness and that this witness' testimony had nothing to with ORC 4517.52. (Motion to Reconsider at 5.) Yet the testimony Kings attaches proves to the contrary; the witness stated "Our comments are limited to those portions of SB 103 that would amend current Ohio statutes governing the franchises of motor vehicles dealers. They do not address other provisions of the bill that relate to warranty performance by manufacturers and distributors." The provisions of the bill concerning "warranty performance by manufacturers" were the "Lemon Law" provisions. The remaining provisions to which this witness testified were the franchise provisions including section 4517.52. (Ex. 4 to Motion to Reconsider.)

The law is clear that the meaning of a statute is best derived "from the words of the statute itself" and certainly not from a "patchwork record of statements inserted by individual legislators." *Isle Royale Boaters Ass'n v. Norton*, 330 F.3d 777, 784-85 (6th Cir. 2003) (quoting *Sigmon Coal Co. v. Apfel*, 226 F.3d 291, 304–05 (4th Cir. 2000), *aff'd*, 534 U.S. 438, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002)); *see also Chrysler Corp. v. Brown*, 441 U.S. 281, 311 (1979) (finding that "[t]he remarks of a single legislator, even the sponsor, are not controlling in analyzing legislative history."); *see also U.S. v. Cain*, 583 F.3d 408, 418-19 (6th Cir. 2009) (finding that when a statute is unambiguous, "[i]solated statements" of individual legislators may not "expand or contract" the statutory text).

Kings also continues to rely on the same cases from Maine that the Court considered and rejected in connection with the summary judgment proceedings. Kings has offered nothing new and merely repeats the same arguments that the Court previously found were misplaced based on the material differences between the Ohio and Maine statutory schemes. (Order at 31, n. 40.) Similarly, Kings continues to rely on its misstatement of the holding and dicta in *Kronon Motor Sales v. Ford Motor Company*. (Motion to Reconsider at 7.) That case primarily concerned parts—not the labor issue for which Kings erroneously cites it—and the judge nowhere determined, as claimed by Kings, that the labor rate referred to in Illinois' dealer act included a fixed amount of repair time established by the dealer. *Kronon*, 41 F.3d 338, 340 (7th Cir. 1994). In fact, the Seventh Circuit acknowledged that labor rate and labor time are distinct concepts in the same manner recognized by this Court. *Id.* at 339 (dealer compensation for warranty labor service is determined by taking "the hourly rate that [the dealer] charges its paying (i.e., nonwarranty) customers times the number of hours [the manufacturer] considers appropriate for

the type of repair or other service in question.")  The Court should again reject these cases as irrelevant.

### III. The Court Correctly Determined That The Contract Between The Parties Governs Payment For The Length Of Time It Takes To Complete A Warranty Repair.

Having determined that ORC 4517.52 does not govern "repair time," the Court properly found that "repair time" is expressly governed by the Dealer Agreements between the parties that have been in effect and honored for years.[10]  (Order at 28-29.)  Kings contends that the Court is wrong for two reasons, both of which were raised in Kings' prior briefs and found wanting by this Court.  (Motion to Reconsider at 12-14; Kings' MSJ at 1.)  First, Kings argues that "a contract may not be enforced so as to be contrary to a statute."  (Motion to Reconsider at 13.)  However, the provisions in the Dealer Agreements relating to repair time are not contrary to ORC 4517.52 because, as determined by the Court, ORC 4517.52 does not govern "repair time."  (Order at 24.)  Second, Kings appears to argue that since the Dealer Agreements are "unilateral in nature," the Court should disregard all of the contractual provisions relating to repair time that the parties have followed for over two decades.  Kings provides literally no legal support for its novel argument that the Dealer Agreements should be ignored based on the alleged disparity of bargaining power between Chrysler Group and Kings.  None of the cases cited by Kings relating to unequal bargaining power support such a sweeping departure from the basic law of contracts. (Motion to Reconsider at 13.)

---

[10] The unrebutted evidence demonstrates that the actual repair times published by Chrysler Group include contingency time to take into account factors like diagnosing the repair and selecting and gathering tools, despite Kings unsupported assertion to the contrary.  (Ex. B to Kings' MSJ (Doc. No. 36:5).)

## IV. The Court Correctly Ruled That Kings Failed To Submit A Particularized Claim As Required By ORC 4517.52.

The Court properly concluded that even if ORC 4517.52 could be interpreted to govern repair time, Kings failed to submit the particularized claim necessary to receive reimbursement for the retail labor rate it desired, which according to Kings' definition included the rate per hour *plus* the fixed time of the repair. (Order at 24-28.) This decision is correct as a matter of law, and the Court properly relied on the plain language of the statute and relevant federal case law in making its determination. *See, e.g., Jim White Agency Co. v. Nissan Motor Corp. in U.S.A.*, 126 F.3d 832, 836 (6th Cir. 1997) (finding that it is the dealer's burden to "present the appropriate claim to the manufacturer."); *see also R & R, Inc. v. Volvo Trucks N. Am.*, 2007 WL 709780, *4 (N.D. Ohio 2007) (same). Notwithstanding Kings' expansive definition of "rate" as including a fixed repair time, Kings merely referred Chrysler Group to the hundreds of "time estimates published in the Motor/Alldata Manual" without identifying the specific amount of time requested for each repair. The Court concluded that, in the absence of a specific claim that includes an actual amount of repair time sought, Chrysler Group "would be forced to guess as to the repair times Plaintiff sought." (Order at 25.)

Kings does not dispute that the two written communications that it offered to the Court as "claims" did not contain particularized information as required by ORC 4517.52, but instead argues that Chrysler Group should have figured out the "fixed amount of time" that King's desired from the scores of repair orders that Kings submitted to Chrysler Group. (Motion to Reconsider at 15-16; Kings' Reply at 12-13.) The Court properly rejected this argument before and should do so again in considering Kings' motion for reconsideration. (Order at 24-25.) The statute nowhere imposes this extraordinary burden on Chrysler Group; in fact, based on the plain language of the statute and

10

relevant federal case law relied on by the Court, the burden to submit a particularized claims rests squarely with Kings. *See* ORC 4517.52; *see also Jim White*, 126 F.3d at 836; *R & R, Inc.*, 2007 WL 709780, at *4.

## V. Kings' Arguments Regarding Parts Are A Mere Regurgitation Of Its Summary Judgment Contentions And Provide No Grounds For Reconsideration

This Court properly determined that Kings never declared its parts markup rate to Chrysler Group. Kings admits that it never came forward with a specific request for a specific percentage markup. (Kings Reply at 14.) Yet, Kings again repeats arguments previously rejected by the Court and offers literally no support for its contention that the Court committed a clear error of law that must be corrected to avoid a manifest injustice. Rather, Kings merely rehashes its discredited legal theory that its only obligation under ORC 4517.52 was to "inform" Chrysler Group in a general manner that it was not reimbursing Kings at the retail rate required by the statute. This Court properly ruled, as a matter of law, that a general notification of this nature is not the type of particularized claim required by the statute. The Court correctly found that ORC 4517.52 requires a dealer to state specifically the percentage mark-up that it desires from its manufacturer and submit verification of that request. (Order at 32.) It is undisputed that Kings never advised Chrysler Group of the specific mark-up percentage that it desired, and certainly never requested a markup of 59.13%, and therefore, Chrysler Group had no obligation under ORC 4517.52 to determine a mark-up for Kings. And, since Kings never made a claim for a markup rate of 59.13%, there is no evidence whatsoever supporting the arbitrary date of December 1, 2011 that Kings demands as the effective date. The Court properly ruled that the effective date of Kings' increased markup rate of 59.13% was July 14, 2013, the date by which Chrysler Group was able to verify and establish Kings' parts rate. (Order at 31-33.)

11

## **CONCLUSION**

For the foregoing reasons, Chrysler Group respectfully requests that Kings' Motion for Reconsideration be denied.

Respectfully submitted,

/s/  Kurt R. Hunt_____
Patrick D. Lane (0012704)
Kurt R. Hunt (0084362)
DINSMORE & SHOHL LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio  45202
Telephone:  (513) 977-8200
Fax:  (513) 977-8141
Email:  pat.lane@dinsmore.com
Email:  kurt.hunt@dinsmore.com

and

Robert D. Cultice (*pro hac vice* 8/15/12)
Lucy Heenan Ewins (*pro hac vice* 8/15/12)
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA  02109
Telephone:  (617) 526-6000
Fax:  (617) 526-5000
Email:  robert.cultice@wilmerhale.com
Email:  lucy.ewins@wilmerhale.com

***Attorneys for Defendant Chrysler Group, LLC***

**CERTIFICATE OF SERVICE**

  I certify that on January 17, 2014, a true and correct copy of the foregoing was filed electronically via the United States District Court for the Southern District of Ohio's CM/ECF electronic filing system, which will send notification of the filing to the following:

Curtis L. Cornett, Esq.
CORS & BASSETT, LLC
537 East Pete Rose Way, Suite 400
Cincinnati, OH  45202

                    /s/ Kurt R. Hunt_____