UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| KINGS DODGE, INC., | : | Case No. 1:12-cv-445 |
| Plaintiff, | : | |
| | : | Judge Timothy S. Black |
| vs. | : | |
| CHRYSLER GROUP, LLC, | : | |
| Defendant. | : | |

**ORDER DENYING PLAINTIFF'S
MOTION FOR RECONSIDERATION (Doc. 56)**

This civil action is before the Court on Plaintiff's motion for reconsideration pursuant to Fed. R. Civ. P. 59(e) (Doc. 56) and the parties' responsive memoranda (Docs. 59, 60).

## I.   PROCEDURAL POSTURE

On November 27, 2013, this Court entered an Order denying Plaintiff's motion for summary judgment (Doc. 36), granting Defendant's motion for summary judgment (Doc. 39), and terminating this case (Doc. 54).  Now, Plaintiff moves for reconsideration, claiming that the Order contains "various clear errors" and alleging "manifest injustice." (Doc. 56 at 1).[1]

---

[1]  The Court notes that Plaintiff's vitriolic commentary detracts from the substance of its legal arguments.  *See, e.g.,* "Unbelievably, Chrysler continues to argue … Instead of dignifying that meritless assertion with a response …"  (Doc. 60 at fn. 4).

1

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 59(e) permits a party to file a motion to alter or amend a judgment.  The Sixth Circuit has determined, however, that a motion to alter or amend judgment may be granted only: "(1) to correct a clear error of law; (2) to account for newly discovered evidence or an intervening change in the controlling law; or (3) to otherwise prevent manifest injustice."  *CGH Transp. Inc. v. Quebecor World, Inc*., 261 Fed. Appx. 817, 823 (6th Cir. 2008) (citing *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)).  Such a motion is extraordinary and is seldom granted because it contradicts notions of finality and repose.  *Wells Fargo Bank v. Daniels*, No. 1:05cv2573, 2007 U.S. Dist. LEXIS 80694, at *1 (N.D. Ohio Oct. 22, 2007).  "Further, under Rule 59(e), parties cannot use a motion for reconsideration to raise new legal arguments that could have been raised before a judgment was issued."  *Roger Miller Music v. Sony/ATV Publ'g,* 477 F.3d 383, 395 (6th Cir. 2007).[2]

## III.   ANALYSIS

### A.   Legislative History of Ohio Revised Code Section 4517.52

First, Plaintiff argues that this Court erred in finding that Ohio Revised Code Section 4517.52 does not regulate the length of time it takes a franchisee to complete

---

[2]  *See also U.S. v. Limited Inc.*, 179 F.R.D. 541, 547 (S.D. Ohio 1988) (motions for reconsideration are not intended to "regurgitate arguments previously presented or present[ing] arguments which originally could have been argued.").  Plaintiff admits, however, that its motion for reconsideration repeats arguments made in its earlier briefs.  (*See, e.g.*, Doc. 56 at 4 ("Thus, as argued by Kings Dodge in its earlier briefs to this Court"); *Id.* at 9 ("As Kings Dodge pointed out to this Court in its earlier briefs"); *Id.* at 10 ("Similarly, as Kings Dodge has previously pointed out to this Court")).

2

warranty repairs.  (Doc. 54 at 24).  Plaintiff maintains that contrary to this Court's finding, the legislative history of Senate Bill 103 ("S.B. 103") indicates that the bill was intended to strengthen the obligations of franchisors toward their franchisees.  (Doc. 56, Ex. A).[3]

Plaintiff raised this identical argument in its prior briefings and therefore cannot use the reconsideration process to repeat its arguments.  *See, e.g., U.S. v. Limited, Inc.*, 179 F.R.D. at 547.  Further, the majority of the documents that Plaintiff characterizes as "legislative history" were considered by this Court before it rendered its Order, and therefore there is no reason this Court should again review these identical documents.  (Doc. 47, Ex. 1; Doc. 51).  Finally, because the documents Plaintiff relies upon existed at the time of its summary judgment briefing, they are not "newly-discovered evidence" and

---

[3] Plaintiff maintains that the remedial nature of this statute requires the Court to accept Plaintiff's interpretation simply because Plaintiff is a dealer to which the statute grants certain rights.  Plaintiff repeatedly states that the Court's Order "only …protect[s]" the Defendant.  (Doc. 60 at 5).  While the Court acknowledges that Section 4517.52 and statutes similar to it are seen "as promoting public welfare by counteracting the economic power of the automobile manufacturers and purportedly correcting past abuses," *Jim White Agency Co. v. Nissan Motor Corp.*, 126 F.3d 836 (6th Cir. 1997), this Court is required to interpret the plain language of the statute.  The Court's Order does not "protect" any party; the Court's Order simply interprets the plain language of the statute.  If the statute does not provide the safeguards that Plaintiff seeks, Plaintiff's redress is with the legislature, not the Court.  Just because a statute is intended to "promote public welfare" does not mean that the Court should or can draw conclusions that are not clear from the plain language of the statute.  (*See, e.g.*, Plaintiff's argument that since its retail customers are subsidizing Chrysler's warranty discount, the remedial purpose of the statute "practically compels the conclusion that the term 'rate', as it is used in ORC § 45117.52 has to be synonymous with the word 'amount', and that therefore Chrysler cannot contract its way out of this requirement."  (Doc. 60 at 6)).

3

cannot justify reconsideration.[4] *Gencorp*, 178 F.3d at 834 ("to constitute 'newly-discovered evidence,' the evidence must have been previously unavailable").[5]

Plaintiff further argues that the absence of any comment in the legislative record about the 1987 deletion of "repair time" language means that the deletion must not have had an effect on the statute's regulation of "repair time." There is no support for this

---

[4] Even if the Court were to accept Plaintiff's argument that the legislative history attached to the motion for reconsideration is not "new evidence," it is a new legal argument that could have been raised before judgment was issued. Motions for reconsideration are not an appropriate vehicle for presenting new legal theories or arguments that "could, with due diligence, have been discovered and offered during the initial consideration of the issue." *Younglove Const. v. PSD Dev.*, 767 F. Supp. 2d 820, 824 (N.D. Ohio 2011). Plaintiff fails to explain why it could not have raised this argument or presented this evidence during its initial briefing. Courts cannot decide cases through piecemeal litigation. *See also Basinger v. CSX Transp., Inc.*, No. 94-3908, 1996 U.S. App. LEXIS 19139, at *10 (6th Cir. July 16, 1996) ("It is not an abuse of discretion for a district court to decline to consider a Rule 59(e) motion in which the movant attempts to submit evidence that was available at the time the movant was contesting a summary judgment motion.").

[5] Even if the Court were to consider the newly presented "legislative history," it is the statement of a single individual, Mr. Siehl -- it is not "legislative history." *See, e.g., Towell-Robinson v. Albert*, 384 B.R. 19, 24 (D.D.C. 2008) (rejecting plaintiffs' reliance on a piece of legislative history as an attempt to inappropriately rewrite the statutory language based on legislative history that amounts to little more than speculation). Specifically, the document upon which Plaintiff relies is the written statement of a non-legislator which simply offers that individual's opinion that the amendment would "simplify and strengthen the obligation upon franchisors to compensate its [sic] franchisees for labor and parts used to fulfill warranty and recall obligations at rates not less than the rates charged by the franchisees to its retail customers for like service and parts for non-warranty work." (*Id.*)

The law is clear that the meaning of a statute is best derived "from the words of the statute itself" and not from a "patchwork record of statements inserted by individual legislators." *Isle Royale Boaters Ass'n v. Norton*, 330 F.3d 777, 784-85 (6th Cir. 2003) (quoting *Sigmon Coal Co. v. Apfel*, 226 F.3d 291, 304-05 (4th Cir. 2000), *aff'd*, 534 U.S. 438 (2002)). Moreover, while it is helpful to consider statutory history, "interpretative canon[s are] not a license for the judiciary to rewrite language enacted by the legislature." *United States v. Albertini*, 472 U.S. 675, 680 (1985). *See also Adams v. Tenn. Dep't of Fin. & Admin.*, 179 F. App'x 266, 272 (6th Cir. 2006) ("It is not within the province of the courts to rewrite legislation [or] superimpose language onto statutes.").

argument.[6] Additionally, there is no support for Plaintiff's contention that without flat rate manuals it would be "literally impossible" to provide consumers with a reliable estimate, because there is nothing prohibiting Plaintiff from using the times published by the Chrysler Group when providing written estimates to its Chrysler Group customers.

Next, Plaintiff suggests that the Alliance of Automobile Manufacturers's *amicus* brief misstated the testimony of the FTC witness which had nothing to do with Section 4517.52. Upon review, it appears that the FTC's testimony dealt exclusively with: "(1) the establishment or relocation of other dealerships with their relevant market areas ("RMA"), and (2) the termination or non-renewal of their franchise agreements by the manufacturer or distributor." (Doc. 57, Ex. 3). The FTC witness did not expressly reference Section 4517.52 nor warranty reimbursement in her testimony to the Legislature. (*Id.* at PageID 3690, 3701-3708). Regardless, the Court in its analysis did not rely on the FTC's testimony. Rather, the Court's analysis focused on the plain language of the statute, and the fact that "repair time" was deleted from Section 4517.52, but that the Legislature elected to retain the language in Section 4517.53. (Doc. 54 at 21-23).

---

[6] *See, e.g., Lynch v. Gallia Ct. Bd. of Comm'rs.*, 680 N.E.2d 1222, 1224 (Ohio 1997) ("When confronted with amendments to a statute, an interpreting Court must presume that the amendments were made to change the effect and operation of the law. However, a reviewing court must not construe a statute so as to supply words that are omitted.").

B.     **Plain Language of Ohio Revised Code Section 4517.52**

Next, Plaintiff maintains that the Court erroneously found that the word "rate," as used in Section 4517.52, does not include the time spent by the dealers in performing warranty repairs. (Doc. 54 at 23-24).

Plaintiff misstates the Order when Plaintiff argues that the Court interpreted the word "rate" under the statute one way for labor and another way for parts. The Court did not "accept[] that the franchisor must pay its franchisees the same 'amount' for warranty parts that the franchisee charges its retail customers for the same parts." (Doc. 56 at 6-7). Rather, the Court repeatedly stated that parts should be reimbursed at the same rate, and that the rate established by Chrysler Group was cost plus a 59.13% markup. (Doc. 54 at 31-33).

The 1987 amendment to the statute deleted the provision in the prior version of the statute that regulated "repair time." (Doc. 46-1). Despite the deletion of the "repair time" language, Plaintiff argues, as it did in its initial motion, that Section 4517.52 requires the Chrysler Group to accept and pay for the amount of time established by Plaintiff for each warranty repair. (Doc. 54 at 21 (citing *Lynch v. Gallia Ct. Bd. of Comm'rs.*, 680 N.E.2d 1222, 1224 (1997) (a reviewing court must not construe a statute so as to supply words that are omitted by an amendment)). The Court again concludes that the legislature's election to retain the repair time language in one section and delete it from another section serves as additional support for the Court's interpretation of Section

6

4517.52 as not requiring Defendant to pay Plaintiff a fixed repair time for each of Plaintiff's warranty repairs. Ohio Revised Code § 4517.53(A); (Doc. 54 at 21-22).

Plaintiff also continues to rely on the cases from Maine that this Court considered and rejected. Plaintiff fails to present any new information about the material differences between the Ohio and Maine statutory schemes. (Doc. 54 at 31, n. 40). Plaintiff also continues to rely on its misstatement of the holding and *dicta* in *Kronon Motor Sales v. Ford Motor Co.*, 41 F.3d 338 (7th Cir. 1994). *Kronon* primarily concerned parts – not the labor issue for which Plaintiff erroneously cites it – and the judge did not determine, as Plaintiff claims, that the labor rate referred to in Illinois' dealer act included a fixed amount of repair time established by the dealer. *Id.* at 340. In fact, the Seventh Circuit acknowledged that labor rate and labor time are distinct concepts. *Id.* at 339 (dealer compensation for warranty labor service is determined by taking "the hourly rate that [the dealer] charges its paying (*i.e.*, nonwarranty) customers times the number of hours [the manufacturer] considers appropriate for the type of repair or other service in question.").

### C. Contractual Relationship Between the Parties

Having determined that Section 4517.52 does not govern "repair time," the Court found that "repair time" is expressly governed by the Dealer Agreements between the parties that have been in effect and honored for years.[7] (Doc. 54 at 28-29).

---

[7] Plaintiff argues this Court failed to credit the testimony of its technicians who testified that "the Alldata/Motor labor times provide much more realistic time allotments [as compared to Chrysler's warranty times]." (Doc. 38, Ex. 6 at ¶¶ 6-7). Contrary to Plaintiff's assertion, the Court did not ignore this testimony; the Court simply found that whether or not Plaintiff's technicians can perform warranty repairs within Chrysler's warranty times is irrelevant to

Plaintiff contends that the Court is wrong for two reasons.

First, Plaintiff argues that "a contract may not be enforced so as to be contrary to a statute." (Doc. 56 at 13). However, as this Court has already determined, the provisions in the Dealer Agreements relating to repair time are not contrary to Section 4517.52, because Section 4517.52 does not govern "repair time." (Doc. 54 at 24).

Second, Plaintiff argues that since the Dealer Agreements are "unilateral in nature," the Court should disregard all of the contractual provisions relating to repair time. However, Plaintiff provides no legal support for this argument, and none of the cases Plaintiff cites support a finding that unequal bargaining power requires a departure from basic contract law.

### D. Retail Labor Rate

This Court concluded that even if Section 4517.52 could be interpreted to govern repair time,[8] Plaintiff failed to submit the particularized claim necessary to receive reimbursement for the retail labor rate it desired. (Doc. 54 at 24-28). Despite Plaintiff's expansive definition of "rate" as including a fixed repair time, Plaintiff simply referred

---

interpreting Section 4517.52. Any dispute regarding the time required to perform warranty repairs should be resolved with Defendant based on the Dealer Policy Manual. The plain meaning of Section 4517.52 does not resolve such disputes. (*See* Doc. 54, fn 26).

[8] Plaintiff argues that this Court "conclu[ded] that Chrysler's time study times represent the 'actual repair times.'" (Doc. 54 at 26). However, the Court clearly does not make any representations about whether Chrysler's time study times present the "actual repair times." (*See* Doc. 54 at 16 ("It was not until November 18, 2011 that Plaintiff claimed Section 4517.52 compelled Defendant to use 'flat times' published in the Motor/Alldata guide and outlawed the use of actual repair times published by Defendant.")). The Court was not suggesting that the times published by Defendant were in fact the "actual repair times."

the Chrysler Group to the hundreds of "time estimates published in the Motor/Alldata Manual" without identifying the specific amount of time requested for each repair. As this Court already concluded, in the absence of a *specific* claim that includes *an actual amount* of repair time sought, Defendant "would be forced to guess as to the repair times Plaintiff sought." (*Id.* at 25). [9]

### E. Retail Parts Rate

Finally, Plaintiff maintains that the Court erred when it found that Plaintiff failed to declare its "appropriate retail rate" with respect to the prices it charged its retail customers for parts. (Doc. 54 at 33). Plaintiff argues that Defendant should have figured out the "fixed amount of time" from the scores of repair orders that Plaintiff submitted to Defendant. (Doc. 56 at 15-16). However, as this Court found previously, the statute does not impose this burden on Defendant. In fact, based on the plain language of the statute and relevant federal case law, the burden to submit a particularized claim rests squarely with Plaintiff. Ohio Revised Code § 4517.52; *Jim White v. Nissan Motor Corp.*, 126 F.3d 836 (6th Cir. 1997).

---

[9] Plaintiff submits that there is nothing "absurd" or "unreasonable" about a construction of Section 4517.52 which would require Chrysler to reimburse Plaintiff for times as presented in the Alldata/Motor time guide. (Doc. 60 at 6). However, unlike Maine, which determined that it is "legally permissible" for a dealer to use the Alldata/Motor time guide, *Darling's v. Daimler Chrysler Motors Co.*, No. AP-2003-17, 2004 Me. Super. LEXIS 132, at *5 (Me. May 10, 2004), no Ohio Court has found the same. Even assuming that there is nothing "absurd" or "unreasonable" about applying the Alldata/Motortime guide, there is also no statutory language that supports applying the Guide.

While Plaintiff is incredulous about the finding that it did not submit a "particularized claim," simply referring to hundreds of time estimates does not meet the requisite burden.  Plaintiff again repeats arguments previously rejected by the Court, rehashing its theory that its only obligation under Section 4517.52 was to "inform" Chrysler Group in a general manner that it was not reimbursing Plaintiff at the retail rate required by the statute.  However, a general notification of this nature is not the type of particularized claim required by the statute.  Section 4517.52 requires a dealer to state specifically the percentage mark-up that it desires from its manufacturer and submit verification of that request.  (Doc. 54 at 32).  It is undisputed that Plaintiff never advised Defendant of the specific mark-up percentage that it desired, and never requested a markup of 59.13%.  Therefore, Defendant had no obligation under Section 4517.52 to determine a mark-up for Plaintiff.  Furthermore, since Plaintiff never made a claim for a markup rate of 59.13%, there is no evidence supporting the arbitrary date of December 1, 2011 that Plaintiff demands as the effective date.  Thus, the effective date of Plaintiff's increased markup rate of 59.13% was July 14, 2013, the date by which Defendant was able to verify and establish Plaintiff's parts rate.  (*Id.* at 31-33).

Plaintiff argues that "it is simply error to conclude that plaintiff did not provide Chrysler with sufficient information to enable Chrysler to verify the times plaintiff charged its retail customers."  (Doc. 60 at 16).  However, providing Defendant with "sufficient information to enable" it to "verify the times" is not what is required.

Plaintiff was required to provide "reasonable verification of *its claimed retail rate* for like parts to Defendant before filing a legal action." *R&R, Inc., v. Volvo Trucks North America*, No. 4:06cv287, 2007 U.S. Dist. LEXIS 13583, at *10 (N.D. Ohio Feb. 28, 2007).  *A fortiori*, to provide verification of its claimed retail rate, Plaintiff naturally needed to articulate its claimed retail rate.  Plaintiff failed to do so.

In sum, Plaintiff has fallen short of meeting the stringent legal standard governing motions for reconsideration.  Specifically, Plaintiff has failed to identify any newly-discovered evidence, any intervening change in the law, or any clear error of law that will result in manifest injustice if not corrected.  *GenCorp, Inc.*, 178 F.3d at 834.

### IV.   CONCLUSION

Accordingly, Plaintiff's motion for reconsideration (Doc. 56) is **DENIED**.

**IT IS SO ORDERED**.

Date:  2/10/14               */s/ Timothy S. Black*
                              Timothy S. Black
                              United States District Judge

11